No. 23-2979

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JAMES MILLER, ET AL.,
*Plaintiffs-Appellees*,

v.

ROB BONTA, IN HIS OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE STATE OF CALIFORNIA, ET AL.,
*Defendants-Appellants.*

**On Appeal from the United States District Court
for the Southern District of California**
No. 3:19-cv-1537-BEN-JLB
The Honorable Roger T. Benitez, Judge

**REPLY IN SUPPORT OF EMERGENCY MOTION UNDER CIRCUIT
RULE 27-3 FOR A STAY PENDING APPEAL
AND FOR AN INTERIM ADMINISTRATIVE STAY**

**RELIEF REQUESTED BY OCTOBER 29, 2023**

ROB BONTA
*Attorney General of California*
MICHAEL J. MONGAN
*Solicitor General*
THOMAS S. PATTERSON
*Senior Assistant Attorney General*
HELEN H. HONG
MICA L. MOORE
*Deputy Solicitors General*

R. MATTHEW WISE
*Supervising Deputy Attorney General*
ANNA FERRARI
JOHN D. ECHEVERRIA
*Deputy Attorneys General*
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  (415) 510-3479
  John.Echeverria@doj.ca.gov
*Attorneys for Defendants-Appellants Rob Bonta and Allison Mendoza, in their official capacities*

October 27, 2023

## TABLE OF CONTENTS

**Page**

Introduction ............................................................................................... 1
Argument .................................................................................................. 1
    I.    The Attorney General Is Likely to Succeed on the Merits ....... 1
    II.   The Equitable Factors Weigh Strongly in Favor of a Stay ....... 8
Conclusion ............................................................................................. 11
Certificate of Compliance ...................................................................... 12

## TABLE OF AUTHORITIES

Page
**CASES**

*Bevis v. City of Naperville, Ill.*
  2023 WL 2077392 (N.D. Ill. Feb. 17, 2023) ................................... 6, 7, 8

*Coal. for Econ. Equity v. Wilson*
  122 F.3d 718 (9th Cir. 1997) ........................................................ 8

*Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*
  2023 WL 2655150 (D. Del. Mar. 27, 2023) ..................................... 5, 6, 8

*District of Columbia v. Heller*
  554 U.S. 570 (2008) ................................................................. 2, 3

*Friedman v. City of Highland Park*
  784 F.3d 406 (7th Cir. 2015) ........................................................ 3

*Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*
  512 F.3d 1112 (9th Cir. 2008) ...................................................... 9

*Grant v. Lamont*
  2023 WL 5533522 (D. Conn. Aug. 28, 2023) .............................. 3, 6, 7, 8

*Hartford v. Ferguson*
  2023 WL 3836230 (W.D. Wash. June 6, 2023) ............................ 4, 6, 7, 8

*Herrera v. Raoul*
  2023 WL 3074799 (N.D. Ill. Apr. 25, 2023) ..................................... 6, 8

*Leiva-Perez v. Holder*
  640 F.3d 962 (9th Cir. 2011) ........................................................ 8

*Maryland v. King*
  567 U.S. 1301 (2012) ................................................................. 8

*Nat'l Ass'n of Gun Rights v. Lamont*
  2023 WL 4975979 (D. Conn. Aug. 3, 2023) .................................. *passim*

# TABLE OF AUTHORITIES
## (continued)

Page

*New York State Rifle & Pistol Ass'n v. Bruen*
    142 S. Ct. 2111 (2022) ................................................................... *passim*

**STATUTES**

California Penal Code
    § 30515 ................................................................................................ 3, 10
    § 30515(a)(1)(D) ....................................................................................... 4
    § 30515(a)(1)-(a)(8) .................................................................................. 4

**CONSTITUTIONAL PROVISIONS**

United States Constitution
    Second Amendment ..................................................................... 1, 2, 6, 7

**OTHER AUTHORITIES**

Kirkpatrick, *The Blast Effect*, Wash. Post (Mar. 27, 2023) ............................ 5

# INTRODUCTION

Plaintiffs' opposition to the Attorney General's motion for a stay pending appeal betrays a fundamental misunderstanding of the *Bruen* framework, and it fails to engage with many of the Attorney General's arguments. The Attorney General is likely to succeed on the merits of appeal—as the great majority of federal courts to consider this issue has already recognized. And the equitable considerations overwhelmingly support a stay pending appeal. Absent a stay, California will experience a sudden influx of assault weapons—commencing just one day before Halloween—at a time when this Court has not yet had an opportunity to resolve whether California's restrictions on those dangerous weapons are constitutional.

# ARGUMENT

## I. THE ATTORNEY GENERAL IS LIKELY TO SUCCEED ON THE MERITS

1. In plaintiffs' view, "*Bruen* leaves no doubt" that their merits position is correct. *E.g.*, Opp. 10. Their arguments, however, reflect a profound misunderstanding of the *Bruen* framework.

Plaintiffs assert that *Bruen* "establish[es] that states can only ban arms that are *both* 'dangerous and unusual.'" Opp. 11. In fact, *Bruen* did not "decide anything about the kinds of weapons that people may possess." *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2157 (2022) (Alito, J., concurring). And it reiterated that the Second Amendment right "is not unlimited" and is "not a right to

1

keep and carry any weapon whatsoever," *id.* at 2128 (opinion of the Court) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)).

Plaintiffs also contend that *Bruen* requires the State to "bear[] the burden of proving that" an arm is not "in common use" for purposes of its threshold inquiry. Opp. 13 (citing *Bruen*, 142 S. Ct. at 2135). But *Bruen* did not assign the burden that way; under *Bruen*, the burden shifts to the State to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition" only after the Court has held that the common-use inquiry is satisfied. *See, e.g.*, 142 S. Ct. at 2129-2130, 2135. Relatedly, plaintiffs assert that once an arm is found to be in "common use," *Bruen* does not authorize any further analysis because States may never "ban[]" such arms. Opp. 14; *see also id.* at 13 (once an "arm" is found to be "commonly owned," "that ends the inquiry"). That is plainly incorrect. *Bruen* teaches that if the "common use" inquiry establishes that a weapon is presumptively protected by the Second Amendment, the next step is to examine whether the State's restriction on that weapon "is consistent with the Nation's historical tradition of firearm regulation." *E.g.*, 142 S. Ct. at 2130; *see id.* at 2134-2156.

2. Applying their mistaken understanding of *Bruen*, plaintiffs assert that it is "straightforward" that each category of assault weapon prohibited by California defines an arm that is in common use for self-defense. Opp. 13. To support that

assertion, plaintiffs rely exclusively on the district court's assessment that semiautomatic firearms are "widely owned," *id.* at 11, and that several million citizens "might own . . . AR-15 type firearms," *id.* at 13. *But see* Mot. 18 n.7 (reflecting that AR- and AK-platform rifles comprise just a fraction—5%—of the current civilian gun stock). But ownership statistics alone do not establish that such arms are "'in common use' today *for self-defense*." *Bruen*, 142 S. Ct. at 2134 (emphasis added).[1]

Like the district court, plaintiffs ignore the record evidence demonstrating that the weapons restricted by California Penal Code Section 30515 are not commonly used for self-defense, and are instead defined as assault weapons because of particular features that make them most suitable for *offensive* use—and especially dangerous to the public and to law enforcement. *See* Mot. 14-15; *see generally Heller*, 554 U.S. at 627 (noting that certain "weapons that are most useful in military service—M-16 rifles and the like—may be banned"). And like the district court, plaintiffs do not even attempt to argue that each specific category of

---

[1] *See Grant v. Lamont*, 2023 WL 5533522, at *5 (D. Conn. Aug. 28, 2023) (denying preliminary injunction motion to enjoin assault weapon restrictions), *appeal docketed*, No. 23-1344 (2d Cir. Sept. 28, 2023); *Nat'l Ass'n of Gun Rights v. Lamont* (*NAGR*), 2023 WL 4975979, at *2 (D. Conn. Aug. 3, 2023) (same), *appeal filed*, No. 22-cv-01118, Dkt. 86 (D. Conn. Aug. 16, 2023); *see generally Friedman v. City of Highland Park*, 784 F.3d 406, 408 (7th Cir. 2015) (observing that submachine guns were "all too common in Chicago" during the prohibition era, but that "popularity didn't give it a constitutional immunity").

prohibited assault weapons is in common use for self-defense. *See* Mot. 18 (citing Cal. Penal Code § 30515(a)(1) through (a)(8)). They do not, for example, explain why "rifles with grenade launchers," *id.* at 18 n.7; *see* Cal. Penal Code § 30515(a)(1)(D), are self-defense weapons. They merely invoke statistics about ownership rates for certain semiautomatic rifles and assert—on that basis alone—that *all* prohibited assault weapons (including prohibited categories of semiautomatic pistols and shotguns) are presumptively protected. *See* Opp. 13; *see also Hartford v. Ferguson*, 2023 WL 3836230, at *3 (W.D. Wash. June 6, 2023) ("It is wholly unclear whether *all* of the weapons (like conversion kits or semiautomatic pistols) regulated by HB 1240 are 'in common use' based on the Plaintiffs' scant submission.").

As to *Bruen*'s historical analysis, plaintiffs appear to concede that a law implicating a "'dramatic technological advancement' . . . would warrant a 'more nuanced' analysis under *Bruen*." Opp. 17; *see Bruen*, 142 S. Ct. at 2132. But they contend—unlike the district court—that "there is no 'dramatic technological advancement'" at issue here. Opp. 17. That is a remarkable contention. The technology in AR-platform rifles was not invented until 150 years after the founding and did not proliferate until recent decades. Mot. 15; *Hartford*, 2023 WL 3836230, at *5. When paired with the tactical features that make semiautomatic rifles "assault weapons" under California law, that technology enables more lethal

rapid fire and results in substantially more deaths and injuries in mass shootings on average than when other weapons are used. Mot. 15-16.[2]

Plaintiffs also contend that California must identify some "national history of banning weapons because they were equipped with furniture like pistol grips, collapsible stocks" or other features that qualify them as an assault weapon under current law. Opp. 15 (quoting Order 16). As other district courts have recognized, that is not correct. *See, e.g.*, *NAGR*, 2023 WL 4975979, at *29; *see also Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.* (*DSSA*), 2023 WL 2655150, at *11 (D. Del. Mar. 27, 2023), *appeal docketed*, No. 23-1634 (3d Cir. Apr. 7, 2023). The State need not identify a historical statute that is a "dead ringer" for a challenged law, *Bruen*, 142, S. Ct. at 2133, especially not in a context where the Supreme Court has called for "a more nuanced approach," *id.* at 2132. Historical regulations such as those barring the use of "trap guns," the possession and carrying of certain weapons, and the concealed carry of dangerous weapons, establish a venerable tradition of regulating particularly dangerous weapons technologies as they spread and cause harm. *See, e.g.*, *NAGR*, 2023 WL 4975979,

---

[2] *See also* Decl. of John D. Echeverria in Supp. of Emergency Mot. (Dkt. 6.2), Ex. 23 (ARPA Study) at 10 (describing assault weapons with a "muzzle velocity of 3200 feet per second" featuring attached "flash suppressor [or] grenade launcher"); Kirkpatrick, *The Blast Effect*, Wash. Post (Mar. 27, 2023), https://tinyurl.com/ybj6ah6k.

at \*31-33. Those historical analogues are "relevantly similar" to modern restrictions on assault weapons. *See id.*[3]

Plaintiffs endorse (Opp. 17) the district court's historical analysis without any apparent discomfort over the limitless nature of that analysis. *See* Mot. 19-21. They do not dispute that, under the district court's analysis, "no state regulation banning *any* firearm—or even 'grenades [or] bombs'—would be 'consistent with the Nation's historical tradition of firearm regulation.'" *Id.* at 21 (citations omitted); *see* Opp. 15 (accepting district court's conclusion that "there are no Founding-era categorical bans on firearms in this nation's history"); *id.* at 16 (repeating claim that there were "[n]o laws of any kind" prohibiting "the keeping or possession of guns"). That flawed understanding of the Second Amendment would impose exactly the kind of "regulatory straightjacket" that *Bruen* warned against. *Bruen*, 142 S. Ct. at 2133. And plaintiffs' puzzling assertion that "[t]he *application* of the *Bruen* standard to the facts of this case is not challenged in the State's motion," Opp. 14, could not be further from the truth.

---

[3] *See also Bevis v. City of Naperville, Ill.*, 2023 WL 2077392, at \*14 (N.D. Ill. Feb. 17, 2023), *appeal docketed*, No. 23-1353 (7th Cir. Feb. 23, 2023); *DSSA*, 2023 WL 2655150, at \*13; *Herrera v. Raoul*, 2023 WL 3074799, at \*10 (N.D. Ill. Apr. 25, 2023) (same), *appeal docketed*, No. 23-1793 (7th Cir. Apr. 26, 2023); *Hartford*, 2023 WL 3836230, at \*4-6; *Grant*, 2023 WL 5533522, at \*6.

6

3. Plaintiffs mostly ignore the substantial body of federal decisions holding that Second Amendment challenges to similar state laws are not likely to succeed. Mot. 12-13. They do not cite a single one of those decisions. *See* Opp. iv-v. They instead summarily assert that each of those decisions "is not persuasive" because those courts ruled on motions for preliminary injunctions without "the benefit of a trial on the merits," "additional briefing," or "evidence on remand." *Id.* at 16. That criticism is hard to take seriously when plaintiffs refuse to engage—at all— with the thorough analysis of the merits issues in those decisions. *See, e.g.*, *NAGR*, 2023 WL 4975979, at *7-33. And it ignores the hundreds of pages of briefing and evidence considered in those proceedings, much of it similar to the record assembled in this case. *See, e.g.*, *NAGR*, No. 22-cv-1118, Dkt. 37 (D. Conn. Jan. 31, 2023) (815 pages of briefing and exhibits); *Grant*, No. 22-cv-1223, Dkt. 59 (D. Conn. July 26, 2023) (1,380 pages of briefing and exhibits); *Bevis*, No. 22-cv-4775, Dkt. 57 (N.D. Ill. Jan. 30, 2023) (911 pages of briefing and exhibits).

After examining those records, six federal district courts found that the Second Amendment claims before them were not likely to succeed on the merits, reasoning that assault weapons are not presumptively protected by the text of the Second Amendment, *see Grant*, 2023 WL 5533522, at *5-6; *NAGR*, 2023 WL 4975979, at *21-26; *Hartford*, 2023 WL 3836230, at *3; or that laws restricting assault weapons are consistent with the Nation's historical tradition of firearm

7

regulation, *see Bevis*, 2023 WL 2077392, at *10-16; *NAGR*, 2023 WL 4975979, at *31-33; *DSSA*, 2023 WL 2655150, at *9-13; *Herrera*, 2023 WL 3074799, at *6-7; *Hartford*, 2023 WL 3836230, at *3-6; *Grant*, 2023 WL 5533522, at *6. That substantial body of authority only confirms that the Attorney General is likely to succeed on the merits of this appeal. At an absolute minimum, it demonstrates why this appeal presents a "substantial case on the merits" and "serious legal questions," which is all that is needed to support a stay where—as here—"the other factors support the stay." *Leiva-Perez v. Holder*, 640 F.3d 962, 966, 968 (9th Cir. 2011); *see* Opp. 17 (citing *Leiva-Perez* with approval for a different proposition).

## II. THE EQUITABLE FACTORS WEIGH STRONGLY IN FAVOR OF A STAY

As to the equitable factors, plaintiffs assert that the State "has failed to show that it will be irreparably injured absent a stay." Opp. 17. But "[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers); *see also Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997). Likewise, unless a statute is "obvious[ly] . . . unconstitutional"—which cannot be the case here in light of the considerable authority pointing in the opposite direction, *see supra* pp. 7-8—there is a strong "public interest" in its continued enforcement and application during the

pendency of a challenge to its validity. *Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*, 512 F.3d 1112, 1127 (9th Cir. 2008).

Plaintiffs characterize the State's harms as "insufficient" (Opp. 19), but they seem to acknowledge that the denial of a stay pending appeal would have dramatic practical effects: If the district court's permanent injunction takes effect, it will result in a sudden influx of assault weapons into California—just as in 2019, when large-capacity magazines flooded into the State after the district court delayed for six days in entering a stay of a permanent injunction in *Duncan v. Becerra*. Opp. 18-19. Plaintiffs do not dispute "that millions of 'high-capacity magazines' entered California during the period in which the district court's decision in *Duncan* was not stayed." *Id.* at 19. And hey do not dispute that the same thing will happen with assault weapons if this motion is denied. *See id.*; *see also* Echeverria Decl. ¶ 61.

Plaintiffs instead argue that the State has failed to "show that this influx will actually lead to irreparable harm" or "any increase in crime." Opp. 18, 19. But the record shows that 67 percent of all mass shootings since 2017 in which six or more victims were killed has involved the use of an assault weapon. Ex. 5 (Klarevas Decl.) at 7; Ex. 13 (Suppl. Klarevas Decl.) at 7. And while plaintiffs broadly dismiss assault weapons as "no more dangerous or capable of use in mayhem" than other arms, Opp. 18, they have no response to the State's evidence that assault

9

weapons significantly increase the number of fatalities in any shooting incident, *see*, *e.g.*, Ex. 5 (Klarevas Decl.) at 9 ("77% increase in fatalities per incident"); that they inflict more extensive injuries, Ex. 3 (Colwell Decl.) ¶ 8; or that recent mass shootings involved the use of assault weapons, Ex. 13 (Suppl. Klarevas Decl.) at 5. The events of this week only underscore those immense practical dangers.

Even with a stay in place, moreover, plaintiffs and other law-abiding Californians will remain able to purchase and possess a wide range of approved firearms, including AR-platform rifles that do not have the specific tactical enhancements or configurations that qualify a firearm as an assault weapon under Section 30515. And they may use those firearms—which they say "are virtually the same as" prohibited assault weapons, Opp. 18 (quoting Order 3)—for self-defense and other lawful-purposes while this Court considers the serious legal questions presented by this appeal. The equitable considerations thus overwhelmingly support a stay pending appeal.

## CONCLUSION

The Court should stay the district court's order and permanent injunction pending appeal.

Dated: October 27, 2023

Respectfully submitted,

ROB BONTA
*Attorney General of California*
MICHAEL J. MONGAN
*Solicitor General*
THOMAS S. PATTERSON
*Senior Assistant Attorney General*
HELEN H. HONG
MICA L. MOORE
*Deputy Solicitors General*
R. MATTHEW WISE
*Supervising Deputy Attorney General*
ANNA FERRARI
*Deputy Attorney General*

s/ John D. Echeverria

JOHN D. ECHEVERRIA
Deputy Attorney General
*Attorneys for Defendants-Appellants Rob Bonta and Allison Mendoza, in their official capacities*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing emergency motion complies with the type-volume limitation of Ninth Circuit Rules 27-1 and 32-3(2) because it consists of 2,440 words, excluding the documents listed at Federal Rules of Appellate Procedure 27(a)(2)(B) and 32(f). This emergency motion complies with the typeface and the type style requirements of Federal Rule of Appellate Procedure 27 because it has been prepared in a proportionally spaced typeface using 14-point font.

Dated: October 27, 2023             s/ John D. Echeverria