No. 23-2979

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

———————————

JAMES MILLER, ET AL.,
*Plaintiffs-Appellees*,

*v.*

ROB BONTA, IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF THE STATE OF CALIFORNIA, ET AL.,
*Defendants-Appellants.*

———————————

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

———————————

## BRIEF FOR AMICI CURIAE NEW JERSEY, MASSACHUSETTS, ARIZONA, COLORADO, CONNECTICUT, DELAWARE, THE DISTRICT OF COLUMBIA, HAWAI'I, ILLINOIS, MAINE, MARYLAND, MICHIGAN, MINNESOTA, NEVADA, NEW YORK, OREGON, PENNSYLVANIA, RHODE ISLAND, VERMONT, AND WASHINGTON IN SUPPORT OF APPELLANTS AND REVERSAL

———————————

MATTHEW J. PLATKIN
   *Attorney General of New Jersey*
Jeremy M. Feigenbaum
   *Solicitor General*
Angela Cai
   *Deputy Solicitor General*
25 Market St, PO Box 080
Trenton, NJ 08625
(862) 350-5800
jeremy.feigenbaum@njoag.gov

ANDREA JOY CAMPBELL
   *Attorney General of Massachusetts*
Amanda Hainsworth
   *Assistant Attorney General*
One Ashburton Place
Boston, MA 02108
(617) 963-2618

(*Additional counsel on signature page*)

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................... ii

INTERESTS OF AMICI ............................................................................. 1

SUMMARY OF THE ARGUMENT ......................................................... 2

ARGUMENT ............................................................................................. 4

I.     To Promote the Safety and Well-Being of Our Residents, States Impose a Range of Restrictions, Including Prohibitions, on Dangerous Weapons and Accessories Not Commonly Used for Self-Defense. ....................................................................................... 4

II.    California's Restrictions on Assault Weapons Comport With the Second Amendment. ........................................................................ 8

      A.     The Second Amendment Does Not Protect Assault Weapons. ..................................................................................... 9

      B.     California's Assault Weapons Control Act Is Relevantly Similar to Historical Restrictions on Firepower and on New, and Distinctly Dangerous, Forms of Weaponry ............... 14

CONCLUSION ....................................................................................... 26

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. of New Jersey*,
    910 F.3d 106 (3d Cir. 2018) ...................................................................26

*Aymette v. State*,
    21 Tenn. 154 (1840) ............................................................................22

*Beauharnais v. Illinois*,
    343 U.S. 250 (1952) ............................................................................17

*Bevis v. City of Naperville*,
    __F.4th__, No. 23-1353,
    2023 WL 7273709 (7th Cir. Nov. 3, 2023)......................................*passim*

*Cargill v. Garland*,
    57 F.4th 447 (5th Cir. 2023).....................................................................6

*Chiafalo v. Washington*,
    140 S. Ct. 2136 (2020) ..........................................................................16

*Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*,
    __F. Supp. 3d__, No. 22-951,
    2023 WL 2655150 (D. Del. Mar. 27, 2023)..........................................13

*District of Columbia v. Heller*,
    554 U.S. 570 (2008) ......................................................................*passim*

*Friedman v. City of Highland Park*,
    784 F.3d 406 (7th Cir. 2015)..............................................12, 17, 26

*Guedes v. ATF*,
    920 F.3d 1 (D.C. Cir. 2019) ...............................................................6

*Hanson v. District of Columbia*,
  __F. Supp. 3d__, 2023 WL 3019777,
  (D.D.C. Apr. 20, 2023) ........................................................... 13

*Heller v. District of Columbia*,
  670 F.3d 1244 (D.C. Cir. 2011) ....................................... 23, 24, 25, 26

*Kolbe v. Hogan*,
  849 F.3d 114 (4th Cir. 2017) (en banc) ................................. 10, 12, 26

*McCullen v. Coakley*,
  573 U.S. 464 (2014) .................................................................. 18

*McDonald v. City of Chicago*,
  561 U.S. 742 (2010) ................................................................ 2, 19

*Miller v. Bonta*,
  __F.Supp.3d__, No. 19-cv-01537,
  2023 WL 6929336, at *39 (S.D. Cal. Oct. 19, 2023) ................... 3, 9, 10

*Nat'l Ass'n for Gun Rights v. Lamont*,
  __F. Supp. 3d__, No. 22-cv-1118,
  2023 WL 4975979 (D. Conn. Aug. 3, 2023) ................................ 11, 13

*New York State Rifle & Pistol Ass'n v. Bruen*,
  142 S. Ct. 2111 (2022) ............................................... *passim*

*New York State Rifle & Pistol Ass'n v. Cuomo*,
  804 F.3d 242 (2d Cir. 2015) ..................................................... 26

*NLRB v. Noel Canning*,
  573 U.S. 513 (2014) ................................................................ 16

*Ocean State Tactical, LLC v. State of Rhode Island*,
  646 F. Supp. 3d 368 (D.R.I. 2022) ......................................... 13

*Oregon Firearms Fed'n v. Kotek*,
  __F. Supp. 3d__, No. 22-cv-01815,
  2023 WL 4541027 (D. Or. July 14, 2023) ............................ 11, 12, 13

*Roth v. United States*,
   354 U.S. 476 (1957) .........................................................................17

*State v. Reid*,
   1 Ala. 612 (1840)...........................................................................25

*United States v. Booker*,
   644 F.3d 12 (1st Cir. 2011) ...........................................................17

*United States v. Morrison*,
   529 U.S. 598 (2000) .........................................................................1

*United States v. Salerno*,
   481 U.S. 739 (1987) .........................................................................1

*United States v. Stevens*,
   559 U.S. 460 (2010) .......................................................................17

*United States v. White*,
   401 U.S. 745 (1971) .......................................................................11

*Williams-Yulee v. Florida Bar*,
   575 U.S. 433 (2015) .......................................................................18

*Worman v. Healey*,
   922 F.3d 26 (1st Cir. 2019) ...................................................2, 24, 26

## Constitutional Provisions and Statutes

U.S. Const. amend. I ........................................................................17, 18

U.S. Const. amend. II...................................................................*passim*

U.S. Const. amend. XIV ........................................................................15

Public Safety and Recreational Firearms Use Protection Act,
   Pub. L. No. 103-322, 108 Stat. 1996 (1994) .......................................4, 6

iv

National Firearms Act of 1934,
   Pub. L. No. 73-474, 48 Stat. 1236 (1934) ....................................22

18 U.S.C. § 921(a) (2000)...................................................................4, 6

18 U.S.C. § 922(v) (2000) .....................................................................4

18 U.S.C. § 922(w) (2000)......................................................................6

1837 Ala. Laws 7, ch. 77, § 2 .........................................................21, 22

1839 Ala. Laws 67, ch. 77, § 1 ...............................................................21

W. Ball, Revised Statutes of the State of Arkansas, Adopted
   at the October Session of the General Assembly of Said State,
   A.D. 1837, § 13, 280 (1838)..............................................................21

1881 Ark. Acts 191, no. 96, § 3 ..............................................................22

1832 Conn. Acts 391, ch. 25 ...................................................................21

1933 Cal. Stat. 1169................................................................................23

Cal. Penal Code § 16740.........................................................................40

Cal. Penal Code § 32310.........................................................................40

An Act to Control the Possession, Sale, Transfer, and Use of Pistols and Other
   Dangerous Weapons in the District of Columbia,
   Pub. L. No. 72-275, 47 Stat. 650 (1932) ..........................................23

1838 Fla. Laws 36, no. 24, § 1...........................................................2, 22

1837 Ga. Acts. 90, § 1.............................................................................21

An Act to Regulate the Sale, Possession and Transportation of Machine Guns,
   1931 Ill. Laws 452, no. 18, §§ 1-2 ...................................................23

v

1819 Ind. Acts 39 ...................................................................................21

1932 La. Acts 336, no. 80, § 1 ................................................................23

1821 Maine Laws 98, ch. 25 ...................................................................21

1771-72 Mass. Province Laws 167, ch. 9 ...............................................21

1782 Mass. Acts 119, ch. 46 ...................................................................20

1882 Mass. Acts 212, ch. 269 .................................................................21

An Act to Regulate and License the Selling, Purchasing, Possessing and
    Carrying of Certain Firearms, 1927 Mich. Pub. Acts 888, no. 372, § 3 ..............23

1933 Minn. Laws 231, ch. 190, § 1 ........................................................23

1825 N.H. Laws 73, ch. 61 .....................................................................21

1772 N.Y. Laws 682, ch. 1549 ...............................................................21

1784 N.Y. Laws 627, ch. 28 ...................................................................20

1927 R.I. Pub. Laws 256, ch. 1052, §§ 1, 4 ...........................................23

1821 Tenn. Acts 15, ch. 13 .....................................................................21

1837-38 Tenn. Acts 200, ch. 137 ............................................................21

1852 Tenn. Acts 246, ch. 169 .................................................................21

1879 Tenn. Acts 135, ch. 96 ...................................................................22

1923 Vt. Acts and Resolves 930, ch. 235, § 5711 ..................................23

1838 Va. Acts 76, ch. 101 .................................................................21, 22

1934 Va. Acts 137, ch. 96 .......................................................................23

vi

**Rules and Regulations**

Fed. R. App. P. 29(a)(2) ............................................................1

**Miscellaneous**

J. Brabner-Smith, *Firearm Regulation*, 1 LAW & CONTEMP. PROBS. 400 (1934) ............................................................25

S. Cornell & N. DeDino, *A Well Regulated Right: The Early American Origins of Gun Control*, 73 FORDHAM L. REV. 487 (2004) ..................................20

H.R. Rep. No. 103-489 (1994) ............................................................3, 25

R. Spitzer, *Gun Law History in the United States and Second Amendment Right*, 80 LAW & CONTEMP. PROBS. 55 (2017) ....................................20

C. Sunstein, *On Analogical Reasoning*, 106 HARV. L. REV. 741 (1993) ................19

## INTERESTS OF AMICI

The *Amici* States—New Jersey, Massachusetts, Arizona, Colorado, Connecticut, Delaware, the District of Columbia, Hawai'i, Illinois, Maine, Maryland, Michigan, Minnesota, Nevada, New York, Oregon, Pennsylvania, Rhode Island, Vermont, and Washington—have compelling governmental interests in public safety and crime prevention. In furtherance of those interests, and pursuant to Fed. R. App. P. 29(a)(2), we submit this brief to explain why California's regulation of the purchase and possession of assault weapons within its borders is wholly consistent with the Second Amendment to the United States Constitution.

There are few interests more paramount to state governments than protecting public safety, and especially "the suppression of violent crime and vindication of its victims." *United States v. Morrison*, 529 U.S. 598, 618 (2000); *see also United States v. Salerno*, 481 U.S. 739, 755 (1987). The *Amici* States bear the solemn responsibility of ensuring the safety of the public and private spaces—the schools, grocery stores, houses of worship, and commercial centers—that make up the fabric of daily life in a free and democratic society. We work every day to promote our residents' health, welfare, and security, including by taking steps to curb the threats of mass shootings and other forms of gun violence that harm our residents and inhibit their exercise of constitutionally protected freedoms.

Exercising our police powers in service of these goals, the *Amici* States have

1

adopted a range of measures that regulate weapons and weapon accessories, while ensuring that our residents have access to weapons for individual self-defense. Although our regulations differ in substance, we share the firm conviction that our Constitution allows States to address gun violence in a manner that is adapted to individual States' needs and consistent with our Nation's historical traditions. In accordance with these objectives, the *Amici* States urge this Court to hold that California's choice to restrict access to certain exceptionally lethal firearms with distinct military origins—"the weapons of choice in many of the deadliest mass shootings in recent history," *Worman v. Healey*, 922 F.3d 26, 39 (1st Cir. 2019), *abrogated on other grounds by New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022)—comports with the Constitution.

## <u>SUMMARY OF THE ARGUMENT</u>

The Second Amendment is "'not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.'" *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2128 (2022) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)). Recognizing that "reasonable firearms regulations" can coexist comfortably with the Second Amendment, *McDonald v. City of Chicago*, 561 U.S. 742, 785 (2010) (plurality op.), the States have adopted a variety of restrictions on weapons and accessories that are not in common use for self-defense. This case concerns one such law: since 1989,

2

California has prohibited the possession and sale of assault weapons through its Assault Weapons Control Act. *See* Cal. Penal Code §§ 30500-30515, 30600, 30605. Like similar laws around the country that restrict certain weapons, accessories, and ammunition, California's law preserves the right of law-abiding, responsible citizens to use firearms for self-defense. The State's regulation of assault weapons applies only to those weapons with enhanced "capability for lethality—more wounds, more serious, in more victims—far beyond that of other firearms in general, including other semiautomatic guns." H.R. Rep. No. 103-489, at 19-20 (1994).

The District Court misapprehended the Supreme Court's recent decision in *Bruen* when it concluded that certain provisions of the Assault Weapons Control Act violate the Second Amendment. *See Miller v. Bonta*, __F.Supp.3d__, No. 19-cv-01537, 2023 WL 6929336, at *39 (S.D. Cal. Oct. 19, 2023). Assault weapons are not constitutionally protected "Arms" under the text of the Second Amendment because they are not commonly used, nor are they suitable, for self-defense. *See Bevis v. City of Naperville*, No. 23-1353, __ F.4th __, 2023 WL 7273709, at *10-13 (7th Cir. Nov. 3, 2023). Moreover, California's regulation of assault weapons is "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126. From the earliest days of our Nation through Reconstruction to the present, States and the federal government have imposed limits on firepower and have restricted novel forms of weaponry that pose unique dangers to public safety.

3

These analogous traditions amply justify California's measured restrictions on assault weapons today. *See Bevis*, 2023 WL 7273709, at *16-18.

## ARGUMENT

I. **To Promote the Safety and Well-Being of Our Residents, States Impose a Range of Restrictions, Including Prohibitions, on Dangerous Weapons and Accessories Not Commonly Used for Self-Defense.**

The Supreme Court has long been clear that the Second Amendment "extends only to certain types of weapons." *Heller*, 554 U.S. at 623-25. States and the federal government retain latitude to regulate categories of weapons and accessories, including by restricting the public carry, possession, and sale of weapons that are not commonly used for self-defense and that pose a threat to our communities. Indeed, the Court has recognized the constitutionality of laws banning categories of bearable weapons—among them, "short-barreled shotguns," and "M-16 rifles and the like"— because certain "type[s] of weapon[s]" are simply "not eligible for Second Amendment protection." *Id.* at 621-23, 625, 627 (emphasis removed).

Consistent with that guidance, States and the federal government have adopted laws that impose restrictions, including prohibitions, on certain categories of particularly lethal weapons that are not suitable for or commonly used in self-

defense. Like the federal government from 1994 to 2004,[1] nine States and the District of Columbia prohibit the purchase and possession of semiautomatic assault weapons.[2] Although state definitions of the prohibited class of weapons differ, they typically encompass weapons like AR-15 and AK-47-style rifles that inflict catastrophic injuries and have distinct combat capabilities, rendering them ubiquitous and uniquely devastating in mass shootings.[3] Thirteen jurisdictions ban automatic-fire machine guns, subject to limited exceptions,[4] while 26 States and the federal government ban machine guns manufactured after May 19, 1986, require registration of machine guns owned before that date, or impose other restrictions.[5] Nine States and the District of Columbia also prohibit short-barreled shotguns or rifles,[6] while the federal government and 22 other States impose restrictions on those weapons.[7] Four jurisdictions prohibit high-caliber rifles,[8] five prohibit guns hidden

---

[1] Public Safety and Recreational Firearms Use Protection Act, Pub. L. No. 103-322, 108 Stat. 1996-2010, codified at 18 U.S.C. §§ 921(a), 922(v) (2000).

[2] *See* Appendix Table 1.

[3] *See id.*

[4] *See* Appendix Table 2.

[5] *See* Appendix Table 3.

[6] *See* Appendix Table 4.

[7] *See* Appendix Table 5.

[8] *See* Appendix Table 6.

in canes and other covert weapons,[9] and 19 jurisdictions and the federal government ban grenades, rocket launchers, or other hand-held destructive devices.[10]

States and the federal government likewise regulate accessories that cannot by themselves be used for offensive or defensive purposes but nevertheless enhance the lethality of weapons. Fourteen States and the District of Columbia restrict the size of ammunition magazines that may be used with semiautomatic weapons, while allowing for possession and sale of smaller-capacity magazines.[11] While 11 of these jurisdictions set a capacity limit at 10 rounds, others, like Delaware, set a higher capacity limit.[12] Eighteen jurisdictions and the federal government ban bump stocks, trigger cranks, binary triggers, rapid-fire trigger activators, or other devices used to approximate an automatic rate of fire with a semiautomatic weapon.[13] Silencers or

---

[9] *See* Appendix Table 7.

[10] *See* Appendix Table 8.

[11] *See* Appendix Table 9. From 1994 to 2004, the federal government also banned handgun and long-gun magazines capable of holding more than 10 rounds. *See* Public Safety and Recreational Firearms Use Protection Act, Pub. L. No. 103-322, 108 Stat. 1998-2000, codified at 18 U.S.C. §§ 921(a), 922(w) (2000).

[12] *See id.*

[13] *See* Appendix Table 10. Courts have split on the lawfulness of the federal regulations construing the statutory term "machine gun" to include bump stocks. *See Cargill v. Garland*, 57 F.4th 447 (5th Cir. 2023), *petition for cert. granted*, No. 22-976; *Guedes v. ATF*, 920 F.3d 1 (D.C. Cir. 2019) (per curiam), *cert. denied*, 140 S. Ct. 789 (2020).

6

suppressors, used to muffle the sound of a gun when it fires, are banned in eight States and the District of Columbia[14] and subject to restrictions or registration requirements by the federal government and 20 more States.[15]

States and the federal government also restrict the type and size of ammunition that can be purchased or possessed. While all States allow for robust access to ammunition, at least 26 jurisdictions prohibit especially dangerous forms of ammunition. Twenty-one jurisdictions and the federal government prohibit the possession or sale of armor-piercing bullets, a type of ammunition designed to penetrate metal or armor.[16] Nine prohibit ammunition designed to explode, detonate, or segment upon impact.[17] Multiple jurisdictions prohibit certain large-caliber ammunition, usable with 50- or 60-caliber weapons[18]; hollow-point bullets, designed to expand in their target on impact[19]; and Flechette shells, expelled from guns as pieces of metal wire or dart-like projectiles.[20] Others ban certain forms of shotgun

---

[14] *See* Appendix Table 11.

[15] *See* Appendix Table 12.

[16] *See* Appendix Table 13.

[17] *See* Appendix Table 14.

[18] *See* Appendix Table 15.

[19] *See* Appendix Table 16.

[20] *See* Appendix Table 17.

ammunition: "Dragon's breath" shells, which are used to simulate a flamethrower by making shotguns spew fireballs or columns of flames, and bolo shells, designed as two or more metal balls connected by a metal wire.[21]

All told, across our country today, States and the federal government impose restrictions, including prohibitions, on a diverse array of especially dangerous weapons, accessories, and ammunition. California's law prohibiting assault weapons is of a piece with this tapestry of regulation and, as discussed below, a long history of governmental efforts to deter violence and promote public safety.

## II. California's Restrictions on Assault Weapons Comport With the Second Amendment.

Against the backdrop of state regulation of unusually dangerous weapons and accessories, and in light of mounting deaths and injuries from mass shootings, California made the choice to ban assault weapons—including those semiautomatic centerfire rifles with combat-oriented features and the capacity to accept more than ten rounds, like AR-15 and AK-47 platform rifles—while preserving broad access to firearms commonly used for self-defense. *See* Cal. Penal Code §§ 30500-30515, 30600, 30605. That choice was constitutional. Under *Bruen*, courts must evaluate a Second Amendment challenge by making two inquiries. First, courts must ask if the Second Amendment right is implicated—*i.e.*, whether its "plain text covers an

---

[21] *See* Appendix Table 18.

8

individual's conduct." 142 S. Ct. at 2126. If it does not, "the regulated activity is categorically unprotected." *Id.* Second, if the conduct is protected, courts ask if the restriction nevertheless accords with "the Nation's historical tradition of firearm regulation." *Id.* Under either step, California's restrictions prove valid.

## A.  The Second Amendment Does Not Protect Assault Weapons.

The District Court wrongly concluded that Plaintiffs-appellees' conduct—to possess and carry "firearms like the AR-15 rifle that are commonly-owned for lawful purposes"—is covered by the Second Amendment's plain text. *Miller*, 2023 WL 6929336, at *8. Assault weapons are not "arms" that are in "'common use' for self-defense today"—a prerequisite for Second Amendment protection. *Bruen*, 142 S. Ct. at 2134, 2143 (quoting *Heller*, 554 U.S. at 627)); *Bevis*, 2023 WL 7273709, at *11 ("[T]he definition of 'bearable Arms' extends only to weapons in common use for a lawful purpose. … [which] is at its core the right to individual self-defense."). For instance, weapons like M-16s that are "most useful in military service" do not fall within the protection of the Second Amendment. *Heller*, 554 U.S. at 627; *Bevis*, 2023 WL 7273709, at *12-14.

There is abundant, uncontested record evidence establishing that assault weapons are "most useful in military service," *Heller*, 554 U.S. at 627, and not commonly used for "armed self-defense," *Bruen*, 142 S.Ct. 2132. Assault weapons are designed to inflict catastrophic injuries by firing high-velocity bullets at long

9

range, and they can easily penetrate walls to injure bystanders, making them poor civilian self-defense weapons. ECF 33-3 (Donohue Decl. ¶¶ 44, 60, 100, 117); *see also* ECF 33-2 (Colwell Decl. ¶¶ 8-12). In fact, one of the designers of the AR-15, the quintessential assault weapon, explained that it was "originally engineered to generate 'maximum wound effect.'" ECF 33-3 (Donohue Decl. ¶ 88); *see also* ECF 137-7 (Roth Decl.¶ 43) (explaining that "rapid-fire semiautomatic weapons with large capacity magazines" were "designed for offensive military applications rather than individual self-defense"). As the Seventh Circuit rightly concluded based on preliminary-injunction evidence in *Bevis*, "we are not persuaded that the AR-15 is materially different from the M[-]16," 2023 WL 7273709, at *14, which *Heller* has confirmed "may be banned," *Heller*, 554 U.S. at 627; *see also Kolbe v. Hogan*, 849 F.3d 114, 136 (4th Cir. 2017) (en banc), (holding that "the banned assault weapons" are most useful in military service), *abrogated on other grounds by Bruen*, 142 S. Ct. at 2126–27.

The District Court's alternate methodology—looking *only* to surveys of whether the weapon in question is commonly possessed, *see Miller*, 2023 WL 6929336, at *37—defies both precedent and common sense. First, the precedent is clear: the test for whether a specific weapon falls within the Second Amendment right turns on whether it is in common *use* for self-defense, not common *ownership*. *See Bruen*, 142 S. Ct. at 2138 (referring to "commonly *used* firearms for self-

10

defense"); *id.* at 2156 (describing "right to bear commonly *used* arms in public");
*see also Heller*, 554 U.S. at 636 (striking down an "absolute prohibition of handguns
held *and used* for self-defense") (emphases added). Courts thus must consider
whether the weapon actually "facilitate[s] armed self-defense," which is "the central
component of the Second Amendment right." *Bruen*, 142 S. Ct. at 2132-33 (citation
omitted). And while many may *believe* that owning a grenade or machine gun or
short-barreled shotgun would be maximally helpful for self-defense, that belief alone
is insufficient. *See Nat'l Ass'n for Gun Rights v. Lamont*, No. 22-cv-1118, __
F.Supp.3d __, 2023 WL 4975979, at *26 (D. Conn. Aug. 3, 2023) (rejecting
relevance of argument "that a modern American citizen might want to possess a
military-grade weapon" for Second-Amendment inquiry), *appeal pending*, No. 23-
1162 (2d Cir.); *Oregon Firearms Fed'n v. Kotek*, No. 22-1815, __ F.Supp.3d __,
2023 WL 4541027, at *30 (D. Or. July 14, 2023) (holding purchasers' "subjective
intent" cannot be dispositive), *appeal pending*, No. 23-35479 (9th Cir.).[22] *Bruen*
requires analysis of the suitability and the actual use of the weapon for self-
defense—which did not happen below.

---

[22] Indeed, subjective expectations alone do not dictate the parameters of other
constitutional rights. *See Oregon Firearms Fed'n*, 2023 WL 4541027, at *30-32
(collecting cases). After all, "it is the task of the law to form and project" and not
just "mirror and reflect" society's "expectations" as the law. *United States v. White*,
401 U.S. 745, 786 (1971) (Harlan, J., dissenting)

Second, a tally approach of ownership figures is hopelessly circular. The number of weapons in circulation depends in significant part on when the government enacted legislation prohibiting it; had governments banned AR-15s the moment they became commercially available, the number of such firearms in circulation would be negligible. But "[i]t would be absurd to say that the reason why a particular weapon can be banned is that there is a statute banning it, so that it isn't commonly owned." *Friedman v. City of Highland Park*, 784 F.3d 406, 409 (7th Cir. 2015); *see also Bevis*, 2023 WL 27273709 at *14-15. Just as "[a] law's existence can't be the source of its own constitutional validity," that governments did not uniformly prohibit a certain firearm for the initial years of commercial production cannot be the reason why the firearm is presumptively protected by the Constitution. *Kolbe*, 849 F.3d at 141.

And if a tally threshold were all that was needed to make a firearm protected by the Second Amendment, manufacturers could "flood[] … the market prior to any governmental prohibition in order to ensure it constitutional protection"—a wholly illogical proposition. *Id.*; *see also Oregon Firearms Fed'n*, 2023 WL 4541027, at *28. Indeed, it was only after the federal assault weapons ban expired that "these weapons began to occupy a more significant share of the market." *Bevis*, 2023 WL 7273709, at *15. So, "if we looked to numbers alone, the federal ban would have

12

been constitutional before 2004, but unconstitutional thereafter"—a result that "lacks both textual and historical provenance," *id.*, not to mention common sense.

Machine guns are a particularly illustrative example. *Heller* was clear the Second Amendment does not protect machine guns because they are "not typically possessed by law-abiding citizens for lawful purposes," and found "startling" the suggestion that machine guns are entitled to constitutional protection. *Heller*, 554 U.S. at 624-25. But under the District Court's flawed theory, machine guns could be protected; data suggest that civilians legally own hundreds of thousands of machine guns. *See Delaware State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, No. 22-cv-951, ____ F.Supp.3d. ____, 2023 WL 2655150, at *5 (D. Del. Mar. 27, 2023), *appeal pending*, No. 23-1633 (3d Cir.).

In sum, the District Court erred in its evaluation of whether assault weapons were actually in common use for self-defense or even suitable for that purpose—questions on which the record compels the answer set forth by California, Br. 24–32. This Court should join other courts post-*Bruen* that have come to the same conclusion. *See, e.g.*, *Bevis*, 2023 WL 27273709 at *12, *14; *Lamont*, 2023 WL 4975979, at *19-26; *cf. Ocean State Tactical v. Rhode Island*, 646 F.Supp.3d 368, 390 (D.R.I. 2022) (similarly holding that large-capacity magazines are not commonly used for self-defense), *appeal pending*, No. 23-1072 (1st Cir.); *Oregon Firearms Fed'n*, 2023 WL 4541027, at *34 (same); *Hanson v. District of Columbia*,

No. 22-cv-2256, ___ F.Supp.3d ____, 2023 WL 3019777, at *7-12 (D.D.C. Apr. 20, 2023) (same), *appeal pending*, No. 23-7061 (D.C. Cir.).

> **B.     California's Assault Weapons Control Act Is Relevantly Similar to Historical Restrictions on Firepower and on New, and Distinctly Dangerous, Forms of Weaponry.**

Should this Court nevertheless assume that assault weapons are protected "Arms," it should conclude that there exists a longstanding tradition of restrictions that are relevantly similar to California's present-day enactment.

1. Restrictions on protected arms are constitutional if the government can demonstrate that such restrictions are "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2129-30. While the Supreme Court has left open the question whether a court should "primarily" look to Founding-era or Reconstruction-era history in evaluating the Nation's traditions, *id.* at 2138, *Bruen* and *Heller* compel the conclusion that courts must consider the broad sweep of our country's history—including nineteenth- and twentieth-century history—when reviewing the constitutionality of a state law.

In both *Heller* and *Bruen*, the Court thoroughly examined eighteenth- and nineteenth-century statutes and case law in assessing the constitutionality of the challenged laws. *See Bruen*, 142 S. Ct. at 2142-56; *Heller*, 554 U.S. at 600-19. The Court made clear that post-ratification history is not only relevant, but a "critical tool of constitutional interpretation" that elucidates "the public understanding of a legal

14

text in the period after its enactment or ratification." *Heller*, 554 U.S. at 605 (emphasis removed); *see Bruen*, 142 S. Ct. at 2136 (same). *Heller* conducted an extensive review of post-ratification sources from 1803 to 1891, *see* 554 U.S. at 605-19, and *Bruen* did likewise through 1890, *see* 142 S. Ct. at 2145-54. *Heller* stressed the importance of post-ratification history to elucidate "the public understanding of a legal text in the period after its enactment or ratification," and took pains to distinguish post-ratification history, which it endorsed, from "postenactment legislative history," which it dismissed as a "contradiction in terms." 554 U.S. at 605 (emphasis removed).

This comprehensive approach accords with governing first principles. States are "bound to respect the right to keep and bear arms because of the Fourteenth Amendment," ratified in 1868, "not the Second" Amendment, ratified in 1791. *Bruen*, 142 S. Ct. at 2137. The public understanding of the scope of constitutional rights shared by those who adopted the Fourteenth Amendment must therefore carry significant weight in the historical analysis. *See Heller*, 554 U.S. at 634-35 ("Constitutional rights are enshrined with the scope they were understood to have when the people adopted them."); S. Calabresi & S. Agudo, *Individual Rights Under State Constitutions When the Fourteenth Amendment was Ratified in 1868: What Rights Are Deeply Rooted in History and Tradition?*, 87 TEX. L. REV. 7, 115-16 (2008) ("[T]he question is controlled not by the original meaning of the first ten

15

Amendments in 1791 but instead by the meaning those texts and the Fourteenth Amendment had in 1868."). Thus, courts have recognized that, "when state- or local-government action is challenged, … the Second Amendment's scope as a limitation on the States depends on how the right was understood when the Fourteenth Amendment was ratified." *Ezell v. City of Chicago*, 651 F.3d 684, 702 (7th Cir. 2011).

*Bruen* also explained that "'a regular course of practice can liquidate & settle the meaning of disputed or indeterminate terms & phrases' in the Constitution." 142 S. Ct. at 2136 (quoting *Chiafalo v. Washington*, 140 S. Ct. 2136, 2326 (2020)). A governmental practice not directly contrary to the text of the Constitution may thus "'guide [a court's] interpretation of an ambiguous constitutional provision,'" particularly where the practice "'has been open, widespread, and unchallenged since the early days of the Republic.'" *Id.* at 2137 (quoting *NLRB v. Noel Canning*, 573 U.S. 513, 572 (2014) (Scalia, J., concurring in the judgment)). *Bruen* itself offered an example of such liquidation: while the Second Amendment's text does not speak directly to the constitutionality of laws prohibiting firearms in sensitive places, the Court was "aware of no disputes regarding the lawfulness of" such enactments during the eighteenth and nineteenth centuries, so the Court "assume[d] it settled that" governments can constitutionally prohibit firearms in certain sensitive places. 142 S. Ct. at 2133.

Twentieth-century history bears on the historical inquiry for the same reason. While twentieth-century history that "contradicts earlier evidence" is not probative, *Bruen*, 142 S. Ct. at 2154 n.28, the Supreme Court has relied on twentieth-century history in its Second Amendment rulings. In *Heller*, the Court characterized laws that originated in the twentieth century—among them, laws banning people with felony convictions or mental illness from possessing weapons—as "longstanding" and "presumptively lawful." 554 U.S. at 626-27 & n.26; *see United States v. Booker*, 644 F.3d 12, 23-24 (1st Cir. 2011) ("[T]he modern federal felony firearm disqualification law … is firmly rooted in the twentieth century."). Similarly, "*Heller* deemed a ban on private possession of machine guns to be obviously valid," but "states didn't begin to regulate private use of machine guns until 1927." *Friedman v. City of Highland Park*, 784 F.3d 406, 408 (7th Cir. 2015). The presumptive lawfulness of these twentieth-century measures was reaffirmed by a majority of the Court in *Bruen*. *See* 142 S. Ct. at 2157 (Alito, J., concurring); *id.* at 2162 (Kavanaugh, J., concurring, joined by Roberts, C.J.); *id.* at 2189 (Breyer, J., dissenting, joined by Sotomayor and Kagan, JJ.).[23]

---

[23] In addressing the scope of the Second Amendment, *Bruen* and *Heller* also "repeatedly compared the right to keep and bear arms" to the right to free speech, noting that "the government must generally point to *historical* evidence about the reach of the First Amendment's protections." *Bruen*, 142 S. Ct. at 2130 (citing *United States v. Stevens*, 559 U.S. 460, 468-71 (2010)) (emphasis in original). When

Furthermore, twentieth-century history can be uniquely probative in cases involving emergent weapons that did not become widely publicly available until the last century. The absence of eighteenth- and nineteenth-century legislative enactments addressing such weapons cannot mean there exists no historical tradition of comparable regulation, because there would have been scant reason for States to regulate the weapons during those eras. This case is a prime example: "[t]he true semi-automatic weapon did not become feasible and available until the beginning of the twentieth century, and the primary market was the military." ECF 137-8 (Spitzer Decl. ¶ 24; *see also id.* ¶¶ 16-17, 19, 22-23). Just as "[t]he First Amendment does not require States to regulate for problems that do not exist," neither does the Second Amendment impose such a non-sensical burden. *McCullen v. Coakley*, 573 U.S. 464, 481 (2014) (citation omitted). Moreover, the Constitution does not require States to legislate to the zenith of their authority by, for example, restricting curio weapons or those that have yet to pose a public-safety problem; rather, the Constitution allows

---

analyzing whether categories of speech fall outside the scope of the First Amendment, the Supreme Court has looked beyond Founding-era history to laws and practices that predominated in the nineteenth and twentieth centuries. *See, e.g.*, *Roth v. United States*, 354 U.S. 476, 484-85 (1957) (looking to "the international agreement of over 50 nations," "the obscenity laws of all of the 48 States," and "the 20 obscenity laws enacted by the Congress from 1842 to 1956" in holding obscene speech unprotected); *Beauharnais v. Illinois*, 343 U.S. 250, 254-56 (1952) (focusing on contemporary criminal codes of the States as well as colonial-era criminal codes and legal developments in the decades after ratification in concluding that libel is not protected speech).

States the flexibility to "adopt laws to address the problems that confront them." *Id.*; *see also Williams-Yulee v. Florida Bar*, 575 U.S. 433, 449 (2015) ("A State need not address all aspects of a problem in one fell swoop; policymakers may focus on their most pressing concerns.").

This Court thus may, and should, consider nineteenth- and twentieth-century practice in assessing Second Amendment challenges to state laws.

2. Laws like California's that restrict unusually dangerous weapons have a long historical pedigree. Since the early days of our republic, governments have limited firepower and restricted access to uniquely dangerous weapons that pose an inordinate public safety risk once those weapons emerged in the commercial market.

To determine whether a challenged statute is consistent with a historical tradition of firearms regulation, courts must reason by analogy. *Bruen*, 142 S. Ct. at 2131-32. Cases like this that implicate "unprecedented societal concerns or dramatic technological changes" demand a "nuanced" approach to analogical reasoning, one that looks to whether, over the course of history, there have existed "relevantly similar" analogues. *Id.* at 2132 (citing C. Sunstein, *On Analogical Reasoning*, 106 HARV. L. REV. 741, 773 (1993)). While the Court did not "provide an exhaustive survey of the features that render regulations relevantly similar," it made clear that "*Heller* and *McDonald* point toward at least two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2132-

19

33 (stressing that "individual self-defense is the *central component* of the Second Amendment right" (quotation marks omitted)). In applying these metrics, courts must bear in mind that the analogical inquiry is not a "regulatory straightjacket," and a modern-day regulation need not be a "dead ringer for historical precursors" to be "analogous enough to pass constitutional muster." *Id.* at 2133.[24]

From the colonial period and on, States and municipalities adopted measures that, like California's present-day law, sought to restrict the firepower of weapons in order to promote public safety. *See* S. Cornell & N. DeDino, *A Well Regulated Right: The Early American Origins of Gun Control*, 73 FORDHAM L. REV. 487, 511 (2004) ("Limits on the amount of gunpowder a person could possess were common and typically in the range of twenty to thirty pounds."); R. Spitzer, *Gun Law History in the United States and Second Amendment Right*, 80 LAW & CONTEMP. PROBS. 55, 80-81 (2017) (summarizing gunpowder storage laws). A 1783 Massachusetts law imposed a fine on "any Person" who "shall take into any [house or building] within the Town of Boston, any … Fire-Arm, loaded with, or having Gun-Powder." 1782 Mass. Acts 119, ch. 46. In 1784, New York required separating gunpowder in the

---

[24] That nuanced approach accords with how analogical reasoning is described in the scholarly sources upon which *Bruen* relied. *See* 142 S. Ct. at 2132. For example, as Cass Sunstein's study explained, analogical reasoning is similar to common-law reasoning, with "the important advantage of allowing a large degree of openness to new facts and perspectives." Sunstein, *supra*, at 782.

home "into four stone jugs or tin cannisters, which shall not contain more than seven pounds each." Act of Apr. 13, 1784, ch. 28, 1784 N.Y. Laws 627, 627. Throughout the 1780s, Pennsylvania laws "required that gunpowder be stored on the highest story of the home" in certain towns. *Heller*, 554 U.S. at 686 (Breyer, J., dissenting). Similar laws were adopted well into the nineteenth century, and the *Amici* States are not aware of court decisions invalidating them. *E.g.*, 1882 Mass. Acts 212, ch. 269 (requiring registration of gunpowder in excess of one pound stored in buildings); 1771-72 Mass. Province Laws 167, ch. 9 (requiring gunpowder imported into Massachusetts to be stored in public magazines); *see also* 1832 Conn. Acts 391, ch. 25; 1825 N.H. Laws 73, ch. 61; 1821 Maine Laws 98, ch. 25; 1772 N.Y. Laws 682, ch. 1549; 1852 Tenn. Acts 246, ch. 169.

Similarly, from the colonial period through today, States and the federal government have adopted measures that, like California's law, regulate novel, and unusually dangerous, weapons that contributed to crime without corresponding utility for self-defense. This tradition followed a predictable pattern: first, new weapons technologies were developed; second, they spread into society and created a public safety threat; and third, governments enacted regulations to dampen weapons-related criminality and violence. In the early nineteenth century, States

increasingly began imposing restrictions on weapons like Bowie knives[25] and pocket pistols[26] that were contributing to rising murder rates. *See* ECF 137-8 (Spitzer Decl. ¶¶34-53); *Aymette v. State*, 21 Tenn. 154, 158 (1840) (in upholding law banning sale and concealed carry of Bowie knives, distinguishing between protected weapons and "weapons which are usually employed in private broils, and which are efficient only in the hands of the robber and the assassin"). Many of the laws prohibited concealed carry of these weapons, and some, like Arkansas's and Tennessee's postbellum statutes regulating pocket pistols, likewise banned sales. *See* An Act to Prevent the Sale of Pistols, ch. 96, § 1, 1879 Tenn. Acts 135-36; 1881 Ark. Acts 191, no. 96, § 3.

During the 1920s and 1930s, the Nation witnessed a new wave of regulation of emergent weapons that threatened public safety. During this era, "at least 32 states enacted anti-machine gun laws," which prohibited or regulated automatic-fire weapons. ECF 137-8 (Spitzer Decl. ¶5). Similarly, Congress enacted the first nationwide firearms regulation statute, the National Firearms Act of 1934, to restrict

---

[25] *See, e.g.*, 1837 Ga. Acts. 90, § 1; Ch. 77, § 2, 1837 Ala. Laws 7, 7; No. 24 § 1, 1838 Fla. Laws 36, 36; Ch. 137, §§ 1-2, 1837-38 Tenn. Acts 200; Ch. 101, § 1, 1838 Va. Acts 76, 76; Ch. 77, § 1, 1839 Ala. Laws 67, 67.

[26] *See, e.g.*, 1819 Ind. Acts 39; 1821 Tenn. Acts ch. 13, p. 15; W. Ball, Revised Statutes of the State of Arkansas, Adopted at the October Session of the General Assembly of Said State, A.D. 1837, § 13, 280 (1838); Ch. 101, § 1, 1838 Va. Acts 76, 76.

22

machine guns, short-barreled shotguns, and other dangerous weapons. *Id.* ¶¶6-7; Pub. L. No. 73-474. During these decades, a number of jurisdictions also banned or otherwise restricted high-capacity semiautomatic weapons shortly after they began to proliferate, typically in the same legislation that established the accepted tradition of banning machine guns. ECF 137-8 (Spitzer Decl. ¶10); *see also Heller v. District of Columbia*, 670 F.3d 1244, 1270 (D.C. Cir. 2011) ("*Heller II*"), *abrogated in part on other grounds by Bruen*, 142 S. Ct. 2111 (Kavanaugh, J., dissenting) (machine guns "have traditionally been banned").[27] In the same era, regulations limiting magazine capacity were also common: twenty-three States imposed some limitation, typically restricting the number of rounds to between five and eighteen. ECF 137-8 (Spitzer Decl. ¶13 & tbl. 1).[28]

This tradition of regulating unusually dangerous weapons is relevantly similar to California's Assault Weapons Control Act in how and why the enactments burden

---

[27] *See* An Act to Regulate and License the Selling, Purchasing, Possessing and Carrying of Certain Firearms, no. 372 § 3, 1927 Mich. Pub. Acts 888, 888-89; Ch. 1052 §§ 1, 4, 1927 R.I. Pub. Laws 256, 256-57; An Act to Control the Possession, Sale, Transfer, and Use of Pistols and Other Dangerous Weapons in the District of Columbia, Pub. L. No. 72-275, 47 Stat. 650, 650 (1932); Ch. 190, § 1, 1933 Minn. Laws 231, 232; Ch. 96, 1934 Va. Acts 137-40.

[28] *See, e.g.*, 1933 Cal. Stat. 1169, 1170; No. 80, § 1, 1932 La. Acts 336, 337; An Act to Regulate the Sale, Possession and Transportation of Machine Guns, no. 18, §§ 1-2, 1931 Ill. Laws 452-53; An Act to Prohibit the Use of Machine Guns and Automatic Rifles in Hunting, ch. 235, § 5711, 1923 Vt. Acts and Resolves 930.

the right to armed self-defense. With respect to how: both types of measures regulate specific dangerous weapons used for criminal and other violent purposes, rather than standard weapons of self-defense. Unlike the laws at issue in *Heller* and *Bruen*, the enactment at issue here, like its historical antecedents, does not amount to a ban on an entire class of arms or effectively prohibit citizens from carrying firearms for self-defense. *See Bevis*, 2023 WL 7273709, at *16 (concluding, in upholding Illinois law banning assault weapons, that "the long-standing tradition of regulating the especially dangerous weapons of the time, whether they were firearms, explosives, Bowie knives, or other like devices … satisf[ies] the 'how' question *Bruen* identified"); *Worman*, 922 F.3d at 32 n.2, 37 (Massachusetts's comparable ban on assault weapons is not an "absolute prohibition on an entire class of firearms" and "does not heavily burden the core right of self-defense"); *Heller II*, 670 F.3d at 1261-62 (District's comparable ban on assault weapons does "not prohibit the possession of 'the quintessential self-defense weapon,' to wit, the handgun" and does not "impose a substantial burden on" the right to self-defense (quoting *Heller*, 554 U.S. at 629)).

The analogical reasoning prescribed by *Bruen* does not require that a historical tradition be the same "type" of regulation as the modern one, nor does it suggest that the only analogue for a weapon-specific ban is another weapon-specific ban. Rather, *Bruen* and *Heller* both relied on the *degree* of burden when evaluating proposed

24

historical analogues. *See Bruen*, 142 S. Ct. at 2145 (examining whether analogues imposed a comparably "substantial burden"); *Heller*, 554 U.S. at 632 (similar). And, California's law imposes, at most, a modest burden on the right to self-defense. *See Worman*, 922 F.3d at 37 (law banning assault weapons "does not heavily burden the core right of self-defense" because using these weapons for self-defense "is tantamount to using a sledgehammer to crack open the shell of a peanut"); *Heller II*, 670 F.3d at 1262 (assault weapons bans "impose only modest burdens [b]ecause they do leave open ample alternative channel[s]" for self-defense). Indeed, assault weapons are not commonly used for self-defense. *See supra*, at 9-14. In the same way, the tradition of regulating specific and particularly dangerous weapons used for criminality likewise did not meaningfully burden self-defense capabilities.

The purpose of California's law is also relevantly similar to the purpose of this tradition of regulation: to enhance public safety in the face of new weapon technology that has threatened, or already inflicted, significant harm on American citizens. The Bowie-knife restrictions of the early 1800s, for example, were intended "to promote personal security, and to put down lawless aggression and violence." *State v. Reid*, 1 Ala. 612, 617 (1840). And the early twentieth-century regulation of machine guns and semiautomatic weapons stemmed from concern over the "growth of armed gangsterism [that] resulted in the use of more deadly weapons by criminals." J. Brabner-Smith, *Firearm Regulation*, 1 LAW & CONTEMP. PROBS. 400,

25

405 (1934). Modern-day laws restricting assault weapons, like California's Assault Weapons Control Act, are likewise a response to the proliferation of these guns in a contemporary form of lawlessness and violence: mass public shootings. *See* H.R. Rep. No. 103-489, at 19 (1994); *Silveira v. Lockyer*, 312 F.3d 1052, 1057 (9th Cir. 2002), *abrogated on other grounds by Heller*, 554 U.S. 570. Courts have widely recognized that because assault weapons were designed for military use and to inflict exceptionally high mortality rates and rates of injury, they have been the "weapons of choice in many of the deadliest mass shootings in recent history." *Worman*, 922 F.3d at 39; *accord Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. of New Jersey*, 910 F.3d 106, 118 (3d Cir. 2018), *abrogated on other grounds by Bruen*, 142 S. Ct. 2111; *Kolbe*, 849 F.3d at 126-27; *New York State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 262-63 (2d Cir. 2015), *abrogated on other grounds by Bruen*, 142 S. Ct. 2111; *Friedman*, 784 F.3d 411; *Heller II*, 670 F.3d at 1262-64.

In choosing to restrict assault weapons within its borders, California acted to prevent these harms, without correspondingly burdening the right to self-defense. Its choice is consistent with a long tradition of relevantly similar historical antecedents, and it comports fully with the Second Amendment.

## CONCLUSION

For the foregoing reasons, this Court should reverse the order of the District Court.

Respectfully submitted,

MATTHEW J. PLATKIN
*Attorney General of New Jersey*

ANDREA JOY CAMPBELL
*Attorney General of Massachusetts*

/s/ Jeremy M. Feigenbaum
Jeremy M. Feigenbaum
*Solicitor General*
Angela Cai
*Deputy Solicitor General*
(862) 350-5800
jeremy.feigenbaum@njoag.gov

Amanda Hainsworth
*Assistant Attorney General*
One Ashburton Place
Boston, Massachusetts 02108
(617) 963-2618
amanda.hainsworth@mass.gov

Date: December 8, 2023

KRISTIN K. MAYES
*Attorney General*
*State of Arizona*
2005 N. Central Avenue
Phoenix, AZ 85004

BRIAN L. SCHWALB
*Attorney General for the*
*District of Columbia*
400 6th Street, NW, Suite 8100
Washington, D.C. 20001

PHILIP J. WEISER
*Attorney General*
*State of Colorado*
1300 Broadway
Denver, CO 80203

ANNE E. LOPEZ
*Attorney General*
*State of Hawaiʻi*
425 Queen Street
Honolulu, HI 96813

WILLIAM TONG
*Attorney General*
*State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

KWAME RAOUL
*Attorney General*
*State of Illinois*
100 West Randolph Street
Chicago, IL 60601

KATHLEEN JENNINGS
*Attorney General*
*State of Delaware*
820 N. French Street
Wilmington, DE 19801

AARON M. FREY
*Attorney General*
*State of Maine*
6 State House Station
Augusta, ME 04333

27

ANTHONY G. BROWN
*Attorney General*
*State of Maryland*
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202

DANA NESSEL
*Attorney General*
*State of Michigan*
P.O. Box 30212
Lansing, MI 48909

KEITH ELLISON
*Attorney General*
*State of Minnesota*
102 State Capitol
75 Rev. Dr. Martin
  Luther King Jr. Blvd.
St. Paul, MN 55155

AARON D. FORD
*Attorney General*
*State of Nevada*
100 North Carson Street
Carson City, NV 89701

LETITIA JAMES
*Attorney General*
*State of New York*
28 Liberty Street
New York, NY 10005

ELLEN F. ROSENBLUM
*Attorney General*
*State of Oregon*
1162 Court Street NE
Salem, OR 97301

MICHELLE A. HENRY
*Attorney General*
*Commonwealth of Pennsylvania*
Strawberry Square, 16th Floor
Harrisburg, PA 17120

PETER F. NERONHA
*Attorney General*
*State of Rhode Island*
150 South Main Street
Providence, RI 02903

CHARITY R. CLARK
*Attorney General*
*State of Vermont*
109 State Street
Montpelier, VT 05609

ROBERT W. FERGUSON
*Attorney General*
*State of Washington*
P.O. Box 40100
Olympia, WA 98504

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** __No. 23-55805_____

I am the attorney or self-represented party.

**This brief contains** __6,209_____ **words,** including _____0_____ words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[X] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** __/s/ Jeremy M. Feigenbaum_____ **Date** _December 8, 2023___
*(use "s/[typed name]" to sign electronically-filed documents)*

29

## **CERTIFICATE OF SERVICE**

On December 8, 2023, the undersigned caused this brief to be filed with the Clerk of the United States Court of Appeals for the Ninth Circuit via electronic filing. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the ACMS system.

/s/ Jeremy M. Feigenbaum
Jeremy M. Feigenbaum
Solicitor General
New Jersey Attorney General's Office

Dated: December 8, 2023

## **APPENDIX**

### **Table 1: Assault Weapon Restrictions**

The following jurisdictions restrict the possession or sale of assault weapons as part of their firearm safety laws.

| *Jurisdiction* | *Jurisdictional Law* |
|---|---|
| **California** | Cal. Penal Code §§ 30500-30515, 30600, 30605. |
| **Connecticut** | Conn. Gen. Stat. §§ 53-202a-202c. |
| **Delaware** | Del. Code tit. 11, §§ 1465-1466(a). |
| **District of Columbia** | D.C. Code Ann. §§ 7-2501.01(3A), 7-2502.01, 7-2502.02(a)(6). |
| **Hawaii** | Haw. Rev. Stat. Ann. §§ 134-1, 134-4, 134-8(a). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-1.9. |
| **Maryland** | Md. Code Ann., Crim. Law §§ 4-301, 4-303. |
| **Massachusetts** | Mass. Gen. Laws ch. 140, §§ 121, 131M. |
| **New York** | N.Y. Penal Law §§ 265.00(22), 265.02(7). |
| **Washington** | Wash. Rev. Code §§ 9.41.0001, 9.41.010(2), 9.41.240 (2023 Wash. Sess. Laws, ch. 162, § 1). |

## **Table 2: Laws Banning Automatic Weapons**

The following jurisdictions ban automatic weapons as part of their firearm safety laws.

| *Jurisdiction* | *Jurisdictional Law* |
|---|---|
| **California** | Cal. Penal Code § 32625. |
| **Colorado** | Colo. Rev. Stat. § 18-12-102. |
| **Delaware** | Del. Code tit. 11, §§ 1444(a)(5), (b)(1). |
| **District of Columbia** | D.C. Code Ann. §§ 7-2501.01(10), 7-2502.01, 7-2502.02(a)(2). |
| **Hawaii** | Haw. Rev. Stat. Ann. § 134-8(a). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-1(a)(7)(i). |
| **Iowa** | Iowa Code §§ 724.1(a), 724.3. |
| **Louisiana** | La. Rev. Stat. Ann. §§ 40:1751 to 40:1752. |
| **Massachusetts** | Mass. Gen. Laws ch. 140, §§ 121, 131(o); Mass. Gen. Laws ch. 269, § 10(c). |
| **Minnesota** | Minn. Stat. § 609.67. |
| **New York** | N.Y. Penal Law § 265.02(2). |

| | |
|---|---|
| **Rhode Island** | R.I. Gen. Laws § 11-47-8(a). |
| **Wisconsin** | Wis. Stat. § 941.26(1g)(a). |

## **Table 3: Laws Requiring Registration of Pre-1986 Automatic Weapons**

The following jurisdictions require that all automatic weapons manufactured before 1986 be registered with a licensing agency as part of their firearm safety laws.

| *Jurisdiction* | *Jurisdictional Law* |
|---|---|
| **Federal** | 18 U.S.C. §§ 921(a)(24), 922(o); 26 U.S.C. § 5845(b). |
| **Alaska** | Alaska Stat. Ann. §§ 11.61.200(a)(3), (h)(1)(C). |
| **Arizona** | Ariz. Rev. Stat. Ann. §§ 13-3101(A)(8)(a)(iii), 13-3102(A)(3). |
| **Connecticut** | Conn. Gen. Stat. § 53-202. |
| **Florida** | Fla. Stat. §§ 790.001(9), 790.221. |
| **Georgia** | Ga. Stat. §§ 16-11-121(2), 16-11-122, 16-11-124(4). |
| **Indiana** | Ind. Code Ann. §§ 35-47-5-8 to 35-47-5-8-10. |
| **Kansas** | Kan. Stat. Ann. § 21-6301(a)(5). |

| | |
|---|---|
| **Maine** | Me. Rev. Stat. Ann. tit. 17-A, §§ 1051-1052. |
| **Maryland** | Md. Code Ann. §§ 4-401 to 4-405. |
| **Michigan** | Mich. Comp. Laws §§ 750.224(1)(a), (3)(c). |
| **Missouri** | Mo. Rev. Stat. § 571.020(1.6)(a). |
| **Montana** | Mont. Code Ann. §§ 45-8-302 to 45-8-304. |
| **Nebraska** | Neb. Rev. Stat. § 28-1203. |
| **Nevada** | Nev. Rev. Stat. Ann. § 202.350(1)(b). |
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(i), 2C:39-5(a), 2C:39-9(a). |
| **North Carolina** | N.C. Gen. Stat. § 14-288.8. |
| **North Dakota** | N.D. Cent. Code § 62.1-05-01. |
| **Ohio** | Ohio Rev. Code Ann. §§ 2923.11(K)(1), 2923.17. |
| **Oregon** | Or. Rev. Stat. § 166.272. |
| **Pennsylvania** | 18 Pa. Cons. Stat. Ann. § 908. |
| **South Carolina** | S.C. Code Ann. §§ 16-23-230 to 16-23-250. |

| | |
|---|---|
| **South Dakota** | S.D. Codified Laws §§ 22-1-2(8), (23), 22-14-6. |
| **Tennessee** | Tenn. Code Ann. §§ 39-17-1302(a)(3), (d). |
| **Texas** | Tex. Penal Code §§ 46.01(9), 46.05(a)(1)(B). |
| **Virginia** | Va. Code §§ 18.2-288 to 18.2-298. |
| **Washington** | Wash. Rev. Code §§ 9.41.010(29), 9.41.190. |
| **West Virginia** | W. Va. Code § 61-7-9. |

## Table 4: Laws Banning Short-Barreled Shotguns or Rifles

The following jurisdictions ban possession of short-barreled shotguns or short-barreled rifles as part of their firearm safety laws.

| *Jurisdiction* | *Jurisdictional Law* |
|---|---|
| **California** | Cal. Penal Code §§ 33210, 33215. |
| **Colorado** | Colo. Rev. Stat. § 18-12-102. |
| **Delaware** | Del. Code tit. 11, §§ 1444(a)(4), (b)(1). |
| **District of Columbia** | D.C. Code Ann. §§ 7-2501.01(15), (17), 7-2502.01, 7-2502.02(a)(1), (a)(3). |
| **Hawaii** | Haw. Rev. Stat. Ann. §§ 134-1, 134-8(a). |

35

| Illinois | 720 Ill. Comp. Stat. 5/24-1(a)(7)(ii). |
|---|---|
| Massachusetts | Mass. Gen. Laws ch. 140, § 121; Mass. Gen. Laws ch. 269, § 10(c). |
| Minnesota | Minn. Stat. § 609.67. |
| New Jersey | N.J. Stat. Ann. §§ 2C:39-1(o), 2C:39-3(b). |
| Rhode Island | R.I. Gen. Laws §§ 11-47-2(15) to 11-47-2(16), 11-47-8(b). |

### **Table 5: Laws Restricting Short-Barreled Shotguns or Rifles**

The following jurisdictions restrict the possession of short-barreled shotguns or short-barreled rifles as part of their firearm safety laws.

| *Jurisdiction* | *Jurisdictional Law* |
|---|---|
| Federal | 18 U.S.C. §§ 921(a)(6), 921(a)(8), 922(a)(4). |
| Alaska | Alaska Stat. Ann. §§ 11.61.200(a)(3), (h)(1)(D). |
| Arizona | Ariz. Rev. Stat. Ann. §§ 13-3101(A)(8)(a)(iv), 13-3102(A)(3). |
| Connecticut | Conn. Gen. Stat. § 53a-211. |
| Florida | Fla. Stat. §§ 790.001(10)-(11), 790.221. |
| Georgia | Ga. Stat. §§ 16-11-121(4)-(5), 16-11-122, 16-11- |

|  |  |
|---|---|
|  | 124(4). |
| **Iowa** | Iowa Code § 724.1C. |
| **Kansas** | Kan. Stat. Ann. § 21-6301(a)(5). |
| **Michigan** | Mich. Comp. Laws § 750.224b. |
| **Missouri** | Mo. Rev. Stat. § 571.020(1.6)(b). |
| **Montana** | Mont. Code Ann. § 45-8-340. |
| **Nebraska** | Neb. Rev. Stat. § 28-1203. |
| **Nevada** | Nev. Rev. Stat. Ann. § 202.275. |
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(i), 2C:39-5(a), 2C:39-9(a). |
| **North Carolina** | N.C. Gen. Stat. § 14-288.8. |
| **North Dakota** | N.D. Cent. Code § 62.1-02-03. |
| **Ohio** | Ohio Rev. Code Ann. §§ 2923.11(K)(1), 2923.17. |
| **Oregon** | Or. Rev. Stat. § 166.272. |
| **Pennsylvania** | 18 Pa. Cons. Stat. Ann. § 908. |

| South Carolina | S.C. Code Ann. §§ 16-23-230 to 16-23-250. |
| South Dakota | S.D. Codified Laws §§ 22-1-2(8), (46), 22-14-6. |
| Texas | Tex. Penal Code §§ 46.01(10), 46.05(a)(1)(C). |
| Washington | Wash. Rev. Code §§ 9.41.010(41)-(42), 9.41.190. |
| Wisconsin | Wis. Stat. § 941-28. |

### **Table 6: Laws Banning 50-Caliber and Other High-Caliber Rifles**

The following jurisdictions ban possession of rifles designed to shoot 50-Caliber and other High-Caliber ammunition.

| *Jurisdiction* | *Jurisdictional Law* |
| --- | --- |
| California | Cal. Penal Code §§ 30530, 30600, 30610. |
| District of Columbia | D.C. Code Ann. §§ 7-2501.01(8A), 7-2502.01, 7-2502.02(a)(7). |
| Illinois | 720 Ill. Comp. Stat. 5/24-1(a)(15)-(16), 5/24-1.9. |
| New Jersey | N.J. Stat. Ann. §§ 2C:39-1(c)(3), (5), 2C:39-3(a). |

## **Table 7: Laws Banning Covert Weapons**

The following jurisdictions ban possession of covert and hidden firearms as part of their firearm safety laws.

| Jurisdiction | Jurisdictional Law |
|---|---|
| **Alabama** | Ala. Code § 13A-11-54. |
| **California** | Cal. Penal Code § 24410. |
| **Massachusetts** | Mass. Gen. Laws ch. 140, § 131N. |
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(hh), 2C:39-3(m). |
| **New York** | N.Y. Penal Law § 265.02(6). |

## **Table 8: Laws Banning Destructive Devices**

The following jurisdictions ban the possession of grenades, rocket launchers, bombs, and other destructive devices as part of their firearm safety laws.

| Jurisdiction | Jurisdictional Law |
|---|---|
| **California** | Cal. Penal Code §§ 16460, 18710. |
| **Colorado** | Colo. Rev. Stat. § 18-12-109(2)(a). |
| **Connecticut** | Conn. Gen. Stat. § 53-80(a). |
| **Delaware** | Del. Code Ann. tit. 11, §§ 1444(a)(1), (b)(1). |

39

| | |
|---|---|
| **District of Columbia** | D.C. Code § 22-4515a. |
| **Florida** | Fla. Stat. §§ 790.001(4), 790.161. |
| **Hawaii** | Haw. Rev. Stat. Ann. § 134-8(a). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-1(a)(7)(iii). |
| **Iowa** | Iowa Code §§ 101A.1(2A), 724.1(1)(c), 724.3. |
| **Massachusetts** | Mass. Gen. Laws ch. 266, § 102(c). |
| **Minnesota** | Minn. Stat. § 609.668. |
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(c)(1), 2C:39-3(a). |
| **New York** | N.Y. Penal Law § 265.02(2). |
| **Oregon** | Or. Rev. Stat. § 480.070. |
| **Pennsylvania** | 18 Pa. Cons. Stat. Ann. §§ 908(a), (c). |
| **Rhode Island** | R.I. Gen. Laws §§ 11-47.1-21. |
| **Utah** | Utah Code Ann. § 76-10-306(3). |
| **Virginia** | Va. Code Ann. § 18.2-85. |

| Wisconsin | Wis. Stat. § 941.26(2)(c). |
|---|---|

### Table 9: Laws Restricting Magazine Capacity

The following jurisdictions restrict the quantity of rounds able to be fired from a single magazine as part of their firearm safety laws.

| *Jurisdiction* | *Jurisdictional Law* |
|---|---|
| California | Cal. Penal Code §§ 16740, 32310. |
| Colorado | Colo. Rev. Stat. §§ 18-12-301, 302, 303. |
| Connecticut | Conn. Gen. Stat. § 53-202w(a)(1). |
| Delaware | Del. Code Ann. tit. 11, §§ 1468, 1469(a). |
| District of Columbia | D.C. Code § 7-2506.01(b). |
| Hawaii | Haw. Rev. Stat. Ann. § 134-8(c). |
| Illinois | 720 Ill. Comp. Stat. 5/24-1.10. |
| Maryland | Md. Code Ann., Crim. Law § 4-305(b). |
| Massachusetts | Mass. Gen. Laws ch. 140, §§ 121, 131M. |
| New Jersey | N.J. Stat. Ann. §§ 2C:39-1(y), 2C:39-3(j). |

| New York | N.Y. Penal Law § 265.02(8). |
|---|---|
| Oregon | 2022 Oregon Ballot Measure 114, § 11. |
| Rhode Island | R.I. Gen. Laws §§ 11-47.1-2, 11-47.1-3. |
| Vermont | Vt. Stat. Ann. Tit. 13, § 4021. |
| Washington | Wash. Rev. Code §§ 9.41.010(22), 9.41.370. |

### Table 10: Laws Banning Bump Stocks

The following jurisdictions ban the possession of bump stocks, trigger cranks, trigger activators, and other devices designed to artificially increase the rate of fire for semi-automatic weapons as part of their firearm safety laws.

| *Jurisdiction* | *Jurisdictional Law* |
|---|---|
| Federal | 18 U.S.C. §§ 921(a)(24), 922(o); <br> 26 U.S.C. § 5845(b); <br> 27 C.F.R. 447.11, 478.11, 479.11. |
| California | Cal. Penal Code § 32900. |
| Connecticut | Conn. Gen. Stat. § 53-206g. |
| Delaware | Del. Code tit. 11, §§ 1444(a)(6), (b)(2). |
| District of Columbia | D.C. Code Ann. § 22-4514(a). |

| | |
|---|---|
| **Florida** | Fla. Stat. § 790.222. |
| **Hawaii** | Haw. Rev. Stat. Ann. § 134-8.5. |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-1(a)(14). |
| **Iowa** | Iowa Code § 724.29. |
| **Maryland** | Md. Code Ann., Crim. Law §§ 4-301, 4-305.1(a). |
| **Massachusetts** | Mass. Gen. Laws ch. 140, §§ 121, 131(o); Mass. Gen. Laws ch. 269, § 10(c). |
| **Michigan** | Mich. Comp. Laws § 750.224e. |
| **Minnesota** | Minn. Stat. § 609.67. |
| **Nevada** | Nev. Rev. Stat. Ann. § 202.274. |
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(ee)-(ff), 2C:39-3(*l*). |
| **New York** | N.Y. Penal Law § 265.02(2). |
| **Oregon** | Or. Rev. Stat. § 480.070. |
| **Pennsylvania** | 18 Pa. Cons. Stat. Ann. §§ 908(a), (c). |
| **Rhode Island** | R.I. Gen. Laws §§ 11-47-2(3), (19), 11-47-8(d), 11- |

| | |
|---|---|
| | 47-8.1. |
| **Vermont** | Vt. Stat. Ann. tit. 13, § 4022. |
| **Virginia** | Va. Code Ann. § 18.2-308.5:1. |
| **Washington** | Wash. Rev. Code §§ 9.41.010(5), 9.41.220. |

## Table 11: Laws Banning Silencers

The following jurisdictions ban the possession of silencers, suppressors, and other accessories designed to mitigate the sound of discharging a weapon as part of their firearm safety laws.

| *Jurisdiction* | *Jurisdictional Law* |
|---|---|
| **California** | Cal. Penal Code § 33410. |
| **Delaware** | Del. Code tit. 11, §§ 1444(a)(3), (b)(1). |
| **District of Columbia** | D.C. Code Ann. § 22-4514(a). |
| **Hawaii** | Haw. Rev. Stat. Ann. §§ 134-1, 134-8(a). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-1(a)(6). |
| **Massachusetts** | Mass. Gen. Laws ch. 269, § 10A. |
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(g), 2C:39-3(c). |

| | |
|---|---|
| **New York** | N.Y. Penal Law § 265.02(2). |
| **Rhode Island** | R.I. Gen. Laws § 11-47-20. |

## <u>Table 12: Laws Restricting Silencers</u>

The following jurisdictions restrict the possession of silencers, suppressors, and other accessories designed to mitigate the sound of discharging a weapon as part of their firearm safety laws.

| *Jurisdiction* | *Jurisdictional Law* |
|---|---|
| **Federal** | 18 U.S.C. § 921(a)(3); 26 U.S.C. §§ 5841(a), 5845(a)(7), 5861. |
| **Alaska** | Alaska Stat. §§ 11.61.200(a)(3), (c), (h)(1)(B). |
| **Arizona** | Ariz. Rev. Stat. Ann. §§ 13-3101(A)(8)(a)(ii), 13-3102(A)(3), 17-251. |
| **Colorado** | Colo. Rev. Stat. § 18-12-102. |
| **Connecticut** | Conn. Gen. Stat. § 53a-211. |
| **Georgia** | Ga. Code Ann. §§ 16-11-121(7), 16-11-122. |
| **Iowa** | Iowa Code § 724.1B. |
| **Kansas** | Kan. Stat. Ann. § 21-6301(a)(4). |
| **Michigan** | Mich. Comp. Laws §§ 750.224(1)(b), (3)(c). |

45

| | |
|---|---|
| **Missouri** | Mo. Rev. Stat. § 571.020(1.6)(c). |
| **Montana** | Mont. Code Ann. § 45-8-337. |
| **Nevada** | Nev. Rev. Stat. Ann. § 202.350(1)(b). |
| **North Carolina** | N.C. Gen. Stat. § 14-288.8. |
| **North Dakota** | N.D. Cent. Code § 62.1-05-01. |
| **Ohio** | Ohio Rev. Code Ann. §§ 2923.11(K)(5), 2923.17(A), (C)(5). |
| **Oregon** | Or. Rev. Stat. § 166.272. |
| **Pennsylvania** | 18 Pa. Cons. Stat. § 908. |
| **South Dakota** | S.D. Codified Laws §§ 22-1-2(8), (17), 22-14-6. |
| **Vermont** | Vt. Stat. Ann. tit. 13, § 4010. |
| **Washington** | Wash. Rev. Code § 9.41.250(1)(c). |
| **Wisconsin** | Wis. Stat. § 941-298. |

## **Table 13: Laws Banning Armor-Piercing Ammunition**

The following jurisdictions ban the possession of ammunition designed to penetrate body armor or vehicle armor as part of their firearm safety laws.

| Jurisdiction | Jurisdictional Law |
|---|---|
| **Federal** | 18 U.S.C. §§ 921(a)(17)(B)-(C), 922(a)(7)-(8). |
| **Alabama** | Ala. Code § 13A-11-60(a). |
| **California** | Cal. Penal Code §§ 16660, 30315, 30320. |
| **Connecticut** | Conn. Gen. Stat. §§ 53-202*l*(a)(1), (b)-(c). |
| **District of Columbia** | D.C. Code Ann. §§ 7-2501.01(13A)(A)(i), 7-2506.01(a)(3). |
| **Florida** | Fla. Stat. §§ 790.31(1)(a), (2)(a)-(c). |
| **Hawaii** | Haw. Rev. Stat. Ann. § 134-8(a). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-2.1, 5/24-2.2. |
| **Indiana** | Ind. Code Ann. § 35-47-5-11.5. |
| **Kansas** | Kan. Stat. Ann. § 21-6301(a)(6). |
| **Kentucky** | Ky. Rev. Stat. Ann. §§ 237.060(7), 237.080. |

47

| | |
|---|---|
| **Louisiana** | La. Rev. Stat. Ann. §§ 40:1810-40:1812. |
| **Maine** | Me. Rev. Stat. Ann. tit. 17-A, § 1056. |
| **Michigan** | Mich. Comp. Laws § 750.224c. |
| **Nevada** | Nev. Rev. Stat. Ann. § 202.273. |
| **New Jersey** | N.J. Stat. Ann. §§ 2C:39-1(gg), 2C:39-3(f). |
| **North Carolina** | N.C. Gen. Stat. § 14-34.3. |
| **Oklahoma** | Okla. Stat. tit. 21, §§ 1289.19-1289.22. |
| **Rhode Island** | R.I. Gen. Laws § 11-47-20.1. |
| **South Carolina** | S.C. Code Ann. § 16-23-520. |
| **Texas** | Tex. Penal Code §§ 46.01(12), 46.05(a)(2). |
| **Virgin Islands** | V.I. Stat. tit. 14, §§ 2256(b)-(c). |

## Table 14: Laws Banning Explosive Ammunition

The following jurisdictions ban the possession of high-explosive incendiary ammunition designed to explode or impart energy upon contact via a charge as part of their firearm safety laws.

| *Jurisdiction* | *Jurisdictional Law* |
|---|---|
| **California** | Cal. Penal Code § 30210. |
| **Florida** | Fla. Stat. §§ 790.31(1)(b), (2)(a)-(c). |
| **Hawaii** | Haw. Rev. Stat. Ann. § 134-8(a). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-1(a)(11), 5/24-3.1(a)(6). |
| **Iowa** | Iowa Code §§ 724.1(1)(f), 724.3. |
| **Missouri** | Mo. Rev. Stat. § 571.020(1.4). |
| **New York** | N.Y. Penal Law § 265.01(7). |
| **Tennessee** | Tenn. Code Ann. § 39-17-1304(b). |
| **Virgin Islands** | V.I. Stat. tit. 14, §§ 2256(b)-(c). |

## Table 15: Laws Banning Large-Caliber Ammunition

The following jurisdictions ban the possession of large-caliber ammunition as part of their firearm safety laws.

| *Jurisdiction* | *Jurisdictional Law* |
|---|---|
| **California** | Cal. Penal Code § 18735. |
| **Connecticut** | Conn. Gen. Stat. §§ 53-202*l*(a)(2), (b)-(c). |
| **District of Columbia** | D.C. Code Ann. §§ 7-2501.01(13A)(A)(iii), 7-2506.01(a)(3). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-1(a)(11), 5/24-1.9(a)(6), (b), (c) (possession ban effective Jan. 1, 2024). |

## Table 16: Law Banning Hollow-Point Bullets

The following state bans the possession of hollow-point and other ammunition designed to expand on impact as part of its firearm safety laws.

| *State* | *State Law* |
|---|---|
| **New Jersey** | N.J. Stat. Ann. § 2C:39-3(f). |

**Table 17: Laws Banning Flechette Ammunition**

The following states ban the possession of flechette shells, or other ammunition that can be fired in a firearm and that expels two or more pieces of fin-stabilized solid metal wire or two or more solid dart-type projectiles, as part of their firearm safety laws.

| State | State Law |
|---|---|
| **California** | Cal. Penal Code §§ 16570, 30210. |
| **Florida** | Fla. Stat. §§ 790.31(1)(f), (2)(a)-(c). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-2.1, 5/24-2.2. |

**Table 18: Laws Banning Dragon's Breath and Bolo Shells**

The following states ban the possession of "Dragon's Breath" shells, ammunition that when fired produces sparks and flames simulating a flamethrower, and bolo shells, ammunition containing two or more large lead balls connected by a wire, that when used may sever a target's limb, as part of their firearm safety laws.

| State | State Law |
|---|---|
| **Florida** | Fla. Stat. §§ 790.31(1)(d)-(e), (2)(a)-(c). |
| **Illinois** | 720 Ill. Comp. Stat. 5/24-2.1, 5/24-2.2. |
| **Iowa** | Iowa Code §§ 724.1(1)(f), 724.2, 724.3. |

51