No. 23-2979

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

JAMES MILLER, *et al.*,

*Plaintiffs-Appellees,*

*v.*

ROB BONTA, *et al.*,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Southern District of California

3:19-CV-01537-BEN-JLB
The Honorable Roger T. Benitez

## BRIEF FOR AMICI CURIAE IDAHO, IOWA, MONTANA, ALABAMA, ALASKA, ARIZONA LEGISLATURE, ARKANSAS, FLORIDA, GEORGIA, INDIANA, KANSAS, KENTUCKY, LOUISIANA, MISSISSIPPI, MISSIOURI, NEBRASKA, NEW HAMPSHIRE, NORTH DAKOTA, OHIO, OKLAHOMA, SOUTH CAROLINA, SOUTH DAKOTA, TEXAS, UTAH, VIRGINIA, WEST VIRGINIA, AND WYOMING SUPPORTING PLAINTIFFS-APPELLEES AND AFFFIRMANCE

AUSTIN KNUDSEN
 *Attorney General State of Montana*
CHRISTIAN B. CORRIGAN
 *Solicitor General*
Peter M. Torstensen, Jr.
 *Deputy Solicitor General*


BRENNA BIRD
 *Attorney General State of Iowa*
ERIC H. WESSAN
 *Solicitor General*

RAÚL R. LABRADOR
 *Attorney General State of Idaho*
JOSHUA N. TURNER
 *Acting Solicitor General*
Sean M. Corkery
 *Assistant Solicitor General*

Idaho Office of the Attorney General
700 W. Jefferson St.
Suite 210
Boise, ID 83720
(208) 334-2400
josh.turner@ag.idaho.gov
jack.corkery@ag.idaho.gov

# TABLE OF CONTENTS

INTEREST OF AMICI STATES .................................................................................. 1

SUMMARY OF ARGUMENT ................................................................................... 2

ARGUMENT ......................................................................................................... 4

I. The Plain Text of the Second Amendment Bars States from Banning Arms
Owned by Millions of Law-Abiding Americans. ..................................................... 4

    A. California is Wrong that the Plain Text of the Second Amendment Only
Covers Arms that are Proven to be Commonly Used for Self-Defense. ........ 6

    B. California is Wrong that the Plain Text of the Second Amendment
Necessarily Excludes Arms "Most Useful In Military Service." ................... 10

    C. California is Wrong that the Firearms It Bans are not Commonly Used for
Self-Defense. ............................................................................................ 13

II. Recycled Laws Rejected By The Supreme Court Do Not Justify California's
Total Ban On Common Arms. ............................................................................... 15

CONCLUSION ................................................................................................... 17

## TABLE OF AUTHORITIES

### CASES

*Bevis v. City of Naperville*,
   85 F.4th 1175 (7th Cir. 2023)........................................................... 6, 13

*Caetano v. Massachusetts*,
   577 U.S. 411 (2016) ........................................................................11

*District of Columbia v. Heller*,
   554 U.S. 570 (2008) ...................................................................*passim*

*Heller v. District of Columbia*,
   670 F.3d 1244(D.C. Cir. 2011) ......................................................13

*Konigsberg v. State Bar of Cal.*,
   366 U.S. 36 (1961) ...........................................................................2

*McDonald v. City of Chicago*,
   561 U.S. 742 (2010) ................................................................... 2, 11

*Nat'l Rifle Ass'n v. Bondi*,
   61 F.4th 1317 (11th Cir. 2023) .......................................................17

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*,
   597 U.S. 1 (2022) ......................................................................*passim*

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*,
   804 F.3d 242 (2d Cir. 2015) ...........................................................13

*Nunn v. State*,
   1 Ga. 243 (Ga. 1846) .......................................................................7

*Teter v. Lopez*,
   76 F.4th 938 (9th Cir. 2023)..........................................................8, 9

### CONSTITUTIONAL PROVISIONS

U.S. Const. amend. II .............................................................................1, 5

### STATUES

Cal. Code Regs. Tit. 11 § 5499 ...............................................................5

Cal. Penal Code § 30510.........................................................................5

Cal. Penal Code § 30515.........................................................................4

### RULES

Federal Rule of Appellate Procedure 29(a)(2).........................................2

## OTHER AUTHORITIES

3 J. Story, *Commentaries on the Constitution of the United States: Amendments to the Constitution* § 1890 (1833), https://tinyurl.com/4j2rdcbt ..............................................11

Amelia Wynne, *Heavily pregnant mother uses an AR-15 to kill a home intruder after two men burst into her Florida home, pistol whipped her husband and grabbed their 11-year-old daughter,* Daily Mail (Nov. 4, 2019, 4:08 PM), https://tinyurl.com/3m6yzs6c .........................14

*Detroit Mom Fires Assault Rifle To Protect Family From Home Invaders,* NewsOne (Feb. 20, 2014), https://tinyurl.com/yc659xtt...............................................................................14

James Wilson, Of Crimes Against the Right of Individuals to Personal Safety, *in* 2 Collected Works of James Wilson 1137 (K. Hall & M. Hall eds., 2007), https://tinyurl.com/2p8244t4 ..........................................................................................3

Michael J. Mooney, *The Hero of the Sutherland Springs Shooting Is Still Reckoning With What Happened That Day,* Texas Monthly (Nov. 2018), https://tinyurl.com/yact97dt .......15

Patrick Sauer, *The Story of the First Mass Shooting in U.S. History,* Smithsonian Magazine (Oct. 14, 2015), https://tinyurl.com/578szh6v ...........................................................17

*Report and Recommendation of the ATF Working Group on the Importability of Certain Semiautomatic Rifles*, Dep't of the Treasury: Bureau of Alcohol, Tobacco and Firearms (July 6, 1989), http://tinyurl.com/c492vy8k....................................................13

St. George Tucker, *View of the Constitution of the United States, with Selected Writings* 91 (Liberty Fund ed. 1999), https://tinyurl.com/bdmzrdzz ........................................ 5, 11

Sharon Fisher, *Idaho's efforts to attract firearms, ammunition makers have paid off*, Idaho Business Review (April 13, 2018), https://tinyurl.com/4rat5ew7 ...............................2

*Sutherland Springs Hero Honored At NRA Convention: 'He Had An AR-15 And So Did I',* CBS Texas (May 4, 2018, 4:45 PM), https://tinyurl.com/5n899j8z...........................15

### INTEREST OF AMICI STATES

The Attorneys General for the States of Idaho, Iowa, Montana, Alabama, Alaska, Arkansas, Florida, Georgia, Indiana, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Nebraska, New Hampshire, North Dakota, Ohio, Oklahoma, South Carolina, South Dakota, Texas, Utah, Virginia, West Virginia, and Wyoming and the Arizona State Legislature (Amici States) submit this brief on behalf of their respective States. Amici States respect the right of the people to keep and bear arms. The Constitution expressly guarantees this right because it is "necessary to the security of a free State." U.S. CONST. amend. II. And particularly today, where crime often goes unchecked and criminal brazenness is only increasing, law-abiding citizens need the ability to arm and defend themselves with effective weapons. For that reason, Amici States have taken unapologetic stands to defend the Second Amendment.

California's "Assault Weapon Control Act" reflects a starkly contrasting view of the Second Amendment. Instead of protecting the right, the Act attacks its core. It disregards a fundamental liberty that belongs to all law-abiding Americans. The Act further encourages other governments to experiment with the people's rights. In many ways, States are laboratories of democracy. But when it comes to the Bill of Rights, States cannot experiment. All States must respect and defend all Americans' rights. Unless enjoined, the AWCA's eroding impact will not be confined to California.

Amici States are also home to lawful firearm businesses that can no longer sell

any of the hundreds of firearms banned by the AWCA in California.[1] California's unconstitutional law should not limit the lawful activity of its own residents or the lawful activity of residents in Amici States.

Accordingly, Amici States file this brief in support of Plaintiffs-Appellees under Federal Rule of Appellate Procedure 29(a)(2).

## SUMMARY OF ARGUMENT

The AWCA is not new. In 1989, California banned the manufacture, distribution, importation, and possession of "assault weapons." 1-ER-4 n.8. In making its policy choice, the legislature mentioned neither a modern rifle as a means of self-defense nor the Second Amendment. 1-ER-5 n.9.

But with the *Heller* decision in 2008 and the *McDonald* decision in 2010, the Supreme Court formally recognized an individual right to be respected by the states—the right to keep and bear arms. *See McDonald v. City of Chicago*, 561 U.S. 742 (2010); *District of Columbia v. Heller*, 554 U.S. 570 (2008). And most recently, *Bruen* elucidated a test to ensure states follow the Second Amendment's "unqualified command." *See N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022) (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)). Undeterred, California continues to enforce the

---

[1] *See* Sharon Fisher, *Idaho's efforts to attract firearms, ammunition makers have paid off*, Idaho Business Review (April 13, 2018), https://tinyurl.com/4rat5ew7 (noting a 2018 "survey ranked Idaho as the state most dependent on the firearms industry" and that other states with strong gun industries include Montana, Alaska, South Dakota, and Wyoming).

AWCA. This Act bans hundreds of firearms—even mere ownership—that were lawful before its enactment and are still lawful across the country. The AWCA is just as unlawful as the bans *McDonald* and *Heller* set aside as unconstitutional.

California's sweeping gun ban strays from the Second Amendment's basic tenets. California has no right to limit firearm rights to whatever it deems "suitable" for self-defense. 1-ER-77. That is not how the Second Amendment works. The Amendment stands as a reminder to governments—state and federal alike—that "the people" have a "*pre-existing*" right to keep and bear arms. *Heller*, 554 U.S. at 592. And the right guarantees law-abiding individuals the very "Arms" California has banned. California's job is to recognize and defend that right, not carve out arbitrary exceptions to it. *See id.* at 585; *see also* James Wilson, Of Crimes Against the Right of Individuals to Personal Safety, *in* 2 Collected Works of James Wilson 1137, 1142 n.x (K. Hall & M. Hall eds., 2007), https://tinyurl.com/2p8244t4 (The right to bear arms "cannot be repealed, or superseded, or suspended by any human institution.").

The *Bruen* analysis here is straightforward. At step one, the Court should have "little difficulty" concluding that the "plain text of the Second Amendment" protects the right to keep and bear the semiautomatic weapons California has banned. *Bruen*, 597 U.S. at 32. Those weapons are "bearable arms," the AWCA bans people from keeping and bearing these "bearable arms," and nothing more at step one is required—especially not California's concocted "'commonly used' for self-defense" test. 1-ER-73; *see also Bruen*, 597 U.S. at 28; *Heller*, 554 U.S. at 582.

3

At step two, California has not come close to meeting its burden to identify a "well-established and representative historical analogue" justifying the AWCA's severe restrictions. *See Bruen*, 597 U.S. at 30. Its reliance on recycled regulations the *Bruen* Court already rejected does not cut it. The Supreme Court held that those regulations do not justify regulating the public carry of "semiautomatic" handguns. *Compare* Cal. Penal Code § 30515(a)(4)-(5) *with Bruen*, 597 U.S. at 8-10. They thus cannot justify the far more restrictive bans here.

Amici States recognize the gravity of gun violence. It is heartbreaking. And it is horrible that members of our society are willing to attack their fellow man. But such violence is not new, and, at ratification in 1789, the Framers responded to this unfortunate reality by ensuring that Americans would always be able to arm themselves with effective and useful weapons. California can act to prevent gun violence, too, and it should—by investigating crime and holding criminals fully responsible for their unlawful conduct. California, however, cannot strip law-abiding citizens of proven ways to defend themselves. The Court should strike down the AWCA and vindicate the people's rights under the Second Amendment.

## ARGUMENT

### I. The Plain Text of the Second Amendment Bars States from Banning Arms Owned by Millions of Law-Abiding Americans.

The Second Amendment protects the people's right to keep and bear "Arms," but California considers some arms—so-called assault weapons—"ill-suited" for self-

defense and has banned even their possession. Dkt. #25.1 at 29. California's list of banned firearms is lengthy—unsurprising given California's narrow concept of self-defense. Cal. Penal Code § 30510 (listing the category of assault weapons banned by the State); Cal. Code Regs. Tit. 11 § 5499 (listing 67 banned AK and AR-15 variations). The AWCA's list of assault weapons includes hundreds of semiautomatic handguns and rifles that law-abiding Americans commonly use for self-defense. Never mind that these firearms are popular or effective. By California's lights, because people do not need elephant guns to shoot rabbits, they also don't need handguns or rifles that hold more than the government-approved amounts of ammunition to defend themselves. But the Second Amendment does not codify California's minimalist principle.

Just the opposite. The Second Amendment protects the right of law-abiding Americans to keep and bear "Arms," which is a broad term that "covers modern instruments that facilitate armed self-defense." *Bruen*, 597 U.S. at 28. It "extends, prima facie, to *all* instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Heller*, 554 U.S. at 582 (emphasis added). The Second Amendment will not "permit any prohibition of arms to the people" that is inconsistent with the Nation's historical tradition. St. George Tucker, *View of the Constitution of the United States, with Selected Writings* 91, 253 (Liberty Fund ed. 1999), https://tinyurl.com/bdmzrdzz. It demands that "the right of the people to keep and bear Arms, shall not be infringed," period. U.S. Const. amend. II. California presumptively bears the burden to prove a firearm falls outside the definition of "arms."

*See Bruen*, 597 U.S. at 22-25; *Bevis v. City of Naperville*, 85 F.4th 1175 (7th Cir. 2023) (Brennan, J., dissenting).

Despite the breadth of the "unqualified command," that the people's right to keep and bear arms shall not be infringed, *Bruen*, 597 U.S. at 17, California contends its firearms ban should bypass Second Amendment scrutiny. The argument mirrors the anti-gun regulators' post-*Bruen* strategy, making arguments "bordering on frivolous" to avoid *Bruen*'s full analysis. *Heller*, 554 U.S. at 582. And so too here, where California claims that its ban of some of the most common arms today does not even implicate the Second Amendment. California could not be more wrong.

### A. California is Wrong that the Plain Text of the Second Amendment Only Covers Arms that are Proven to be Commonly Used for Self-Defense.

The Second Amendment conceives of "Arms" broadly, and California wrongly reads a qualification into the text and changes *Bruen*'s step-one analysis. California's main argument on appeal is grounded in its made-up test. It repeatedly argues that *Bruen*'s first step requires a plaintiff to prove that the "Arms" at issue are commonly used for self-defense. Dkt. #25.1 at 24-31; *see* 1-ER-73-75. But that is not what *Bruen* requires. Courts must determine whether the AWCA regulates conduct covered by the "plain text" of the Second Amendment—whether the banned firearms are "bearable arms." *See Bruen*, 597 U.S. at 17. The AWCA does, so it is presumptively unlawful, and California bears the burden of justifying its facial infringement. *Id.*

But California tries to duck its burden with its made-up test and mischaracterized language from *Heller* and *Bruen*. Dkt. #25.1 at 35. For example, the Court in *Heller* noted "that the sorts of weapons protected were those 'in common use at the time.'" *Heller*, 554 U.S. at 627 (citation omitted). And the Court in *Bruen* said that "[t]he Second Amendment guaranteed to 'all Americans' the right to bear commonly used arms in public subject to certain reasonable, well-defined restrictions." *Bruen*, 597 U.S. at 70 (citation omitted). Neither of these statements supports California's necessary-condition test that "Arms" must be "commonly used for self-defense"—particularly at *Bruen*'s first step. Dkt. #25.1 at 35; 1-ER-73-75. If anything, the Supreme Court's "common use" language supports a sufficient condition for finding arms protected at step two.

Even so, *Heller* and *Bruen* rejected California's reading. *Heller* says the Second Amendment "extends, prima facie, to all instruments that constitute bearable arms" and explains that "bearable arms" include all weapons possessed or carried "for offensive or defensive action in a case of conflict." *Heller*, 554 U.S. at 582, 584; *see also id.* at 581 (relying on a founding-era "source [that] stated that all firearms constituted 'arms'"). Likewise, *Bruen* reaffirms that understanding and adds that the term "Arms" broadly "covers modern instruments that facilitate armed self-defense." *Bruen*, 597 U.S. at 18. And *Nunn v. State*, 1 Ga. 243 (Ga. 1846)—which the *Bruen* Court found "particularly instructive," 597 U.S. at 54 (citing *Nunn*, 1 Ga. at 251 )—understood the right to include "*arms* of every description, and not *such* merely as are used by the *militia*." *Nunn*, 1 Ga.

7

at 251 (emphasis added). The arbitrarily defined "assault weapons" that California bans are "bearable arms"; they are possessed or carried for "offensive or defensive action"; and they are "modern instruments that facilitate armed self-defense." *Heller*, 554 U.S. at 582, 584; *Bruen*, 597 U.S. at 28. Criminal misuse of a gun does not change that gun's nature. And denying a citizen's lawful ownership of a firearm because a criminal misuses the same type of gun is almost like a Second Amendment perversion of the heckler's veto.

California ignores this analysis entirely. It instead claims that "assault weapons" are not "commonly used for self-defense." *See, e.g.,* Dkt. #25.1 at 18, 29, 32, 35-42; 1-ER-67-71, 76-78. That is irrelevant at step one—it's also incorrect (more on that later). Arms covered by the Second Amendment need only be "bearable." *Heller*, 554 U.S. at 582. There is no threshold requirement that a firearm achieve "common use" status before it falls within the Amendment's scope. *See Teter v. Lopez*, 76 F.4th 938, 950 (9th Cir. 2023) (noting that the Supreme Court in *Heller* "did not say that dangerous and unusual weapons are not arms"). Under California's view, a government could ban any firearm if it acts quickly enough. But of course, that understanding renders the arms-bearing right contingent on the State, rather than a natural and pre-political right serving as a moral check on the State. *See Heller*, 554 U.S. at 585; *see also* Wilson 1142 (The right to bear arms "cannot be repealed, or superseded, or suspended by any human institution.").

*Bruen*'s analysis on this score confirms that the "plain text" of the Second Amendment covers "assault weapons" as defined by the AWCA. The Court had "little difficulty concluding" that the Second Amendment protected the right to carry all types of handguns publicly for self-defense. *Bruen*, 597 U.S. at 32. The Court did not even question whether the firearms at issue were "Arms." *Id.* It did not pause and count round capacity. Nor did it consider how criminals used them. It simply noted that the "textual elements" of the Second Amendment "guarantee the individual right to possess and carry weapons in case of confrontation." *Id.* (citation omitted). Beyond being "bearable," the class, type, capacity, and "common use" of a weapon play no part in the step-one analysis.

California's test is just a disguised attempt to dodge its step-two burden and place that burden instead on plaintiffs. A plaintiff challenging a firearms regulation need only show that "the Second Amendment's plain text covers [his] conduct." *Bruen*, 597 U.S. at 17. That's it. The analysis goes on with the government bearing the burden at step two to justify its regulation, which it may do in this case by showing that the regulated firearms are "dangerous and unusual." *Id.* at 47 ("At most, [the State] can show that colonial legislatures sometimes prohibited the carrying of 'dangerous and unusual weapons.'"); *Teter*, 76 F.4th at 950 ("whether [weapons] are 'dangerous and unusual' is a contention as to which [the State] bears the burden of proof in the second prong of the *Bruen* analysis."). In other words, whether a firearm is "commonly used for self-defense" or "dangerous and unusual" is a step-two consideration. *See id.*

All that matters at *Bruen*'s first step is that California bans ownership of "bearable arms." This makes the AWCA presumptively unconstitutional.

## B. California is Wrong that the Plain Text of the Second Amendment Necessarily Excludes Arms "Most Useful In Military Service."

California's next pass at evading its burden under *Bruen* goes something like this. California agrees that the Second Amendment applies to civilian self-defense. Dkt. #25.1 at 42. And, so the argument continues, because "assault weapons" are "most useful in military service," they fall outside the Second Amendment's "prima facie" sweep. Dkt. #25.1 at 42; 1-ER-13. That argument is meritless.

To begin, California's "offensive" and "military service" test makes no sense. Arms cannot be classified as strictly "offensive" or "defensive" weapons. Any weapon useful for self-defense purposes is capable of "offensive" uses. The Second Amendment does not turn on how a weapon is used. California's "most useful in military service" test is just as problematic. Consider the 1911. It might be the most popular handgun in the world—expressly protected by the Second Amendment under *Bruen* and *Heller*—and yet Colt designed it at the request of, and for, the U.S. military. The 1911 is far more militaristic than, say, the AR-15, a civilian semi-automatic firearm that the U.S. military has never adopted. Following California's rationale requires flouting the Supreme Court to ban firearms the Supreme Court has already said are protected. California's new test is not so new—tests like California's are defunct for the same reason a "dangerous" test "cannot be used to identify arms that fall outside the

Second Amendment." *Caetano v. Massachusetts*, 577 U.S. 411, 418 (2016) (Alito, J., concurring).

But more to the point, the Second Amendment protects "offensive" arms and arms "most useful in military service." The Court in *Heller* linked arms and military usefulness when it defined "Arms" as including "instruments of offence *generally* made use of in war." *Heller*, 554 U.S. at 581 (citation omitted). And both *Heller* and *Bruen* confirm that the right to "bear arms" includes the right "of being armed and ready for offensive or defensive action in a case of conflict with another person." *Heller*, 554 U.S. at 584 (citation omitted); *Bruen*, 597 U.S. at 32. Indeed, the very reason the Framers included the right was to serve as "a strong moral check against the usurpation and arbitrary power of rulers" that would "enable the people to resist and triumph over them." 3 J. Story, *Commentaries on the Constitution of the United States: Amendments to the Constitution* § 1890, at 746 (1833), https://tinyurl.com/4j2rdcbt. That is why they referred to the right as "the true palladium of liberty" and warned that government narrowing the right would place liberty "on the brink of destruction." Tucker, *supra*, at 238-39; *see also McDonald*, 561 U.S. at 769. And the militia—a citizen military force armed with personal weapons—was seen as necessary to secure liberty and repel tyranny. California is thus wrong to argue that "offensive" and militaristic arms are wholly unprotected by the Second Amendment.

To be sure, the Supreme Court has emphasized that the right to keep and bear arms is not tied to use merely in a militia but also includes an individual right to self-

11

defense. *See Bruen*, 597 U.S. at 20; *Heller*, 554 U.S. at 599. But it also has never limited the right to individual self-defense. "[P]reserving the militia" and "hunting" are additional legitimate reasons "Americans valued the ancient right." *Heller*, 554 U.S. at 599. The Court has simply corrected the narrow and incorrect view that the Second Amendment protects firearm possession only in connection with militia service. *Id.* at 577. Today, California adopts an equally narrow and incorrect view, this time carving out militia service and hunting. Its cabined view of the Second Amendment lacks textual or precedential support.

Nor is it not enough for California to hang its argument on the passing observation in *Heller* that "M16 rifles and the like" may be banned. Dkt. #25.1 at 42; 1-ER-76. *See Heller*, 554 U.S. at 627. For one, aside from the stray comment being dicta, any similar ban would still need to pass through *Bruen*'s second step. A firearm ban is not exempt from *Bruen*'s full analysis just because it happens to be analogous to a different unchallenged regulation. For another, the ban at issue involves semiautomatic firearms, not fully automatic firearms like the M16. The firearms banned here are in common civilian use like the handguns banned in *Heller*. That contrasts with the almost exclusively military M16.

Militia service is not the only reason for the Second Amendment right, but neither is it irrelevant to the right. Weapons useful for self-defense and militia service fit within the scope of "Arms" protected by the Second Amendment. And California's

12

use of "scary" adjectives like "offensive" and "military" to describe firearms it bans does not automatically render those firearms unprotected.

### C. California is Wrong that the Firearms It Bans are not Commonly Used for Self-Defense.

Even if this Court decided to apply California's made-up test, the banned "assault weapons" are in "common use" for self-defense. Dkt. #25.1 at 29 (quoting *Bruen*, 597 U.S. at 32). First, the banned arms are in "common use," which makes the ban "constitutionally suspect." *Bevis*, 85 F.4th at 1212 (Brennan, J., dissenting). Millions are owned by millions of Americans. They are even more common than America's most common pickup truck. 1-ER-16-17. The undeniable ubiquity of these firearms has led courts to find that they are in common use. *See, e.g., Heller v. District of Columbia*, 670 F.3d 1244, 1261 (D.C. Cir. 2011) ("We think it clear enough in the record that semi-automatic rifles and magazines holding more than ten rounds are indeed in 'common use.'"); *N.Y. State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 255 (2d Cir. 2015) ("[T]he assault weapons and large-capacity magazines at issue are 'in common use' as that term was used in *Heller*."). Even the ATF has recognized that the firearms California targets are both suitable for "home and self-defense" and "popular" for "self-defense." *Report and Recommendation of the ATF Working Group on the Importability of Certain Semiautomatic Rifles*, Dep't of the Treasury: Bureau of Alcohol, Tobacco and Firearms (July 6, 1989), http://tinyurl.com/c492vy8k.

The "assault weapons" banned by the AWCA are not just commonly owned, but they are commonly used for self-defense. A few harrowing reports shows just how important these arms are when it comes to lawful self-defense. In 2019, two masked and armed burglars invaded a family's home just outside of Tampa, Florida. *See* Amelia Wynne, *Heavily pregnant mother uses an AR-15 to kill a home intruder after two men burst into her Florida home, pistol whipped her husband and grabbed their 11-year-old daughter,* Daily Mail (Nov. 4, 2019, 4:08 PM), https://tinyurl.com/3m6yzs6c. Those violent criminals aimed their guns at the father and his 11-year-old daughter and pistol-whipped and kicked the father while demanding money. *Id.* The mother, who was pregnant at the time, was in another part of the house, got ahold of the family's AR-15, and opened fire on the armed invaders. *Id.* The father would later say, "the AR did its thing" and saved his family's life. *Id.*

In 2014, a Detroit mother protected her children from men who had kicked her door down. *See Detroit Mom Fires Assault Rifle To Protect Family From Home Invaders,* NewsOne (Feb. 20, 2014), https://tinyurl.com/yc659xtt. With an assault rifle in hand, she warned the intruders that she had a gun. *Id.* They scoffed, and she fired a warning shot, which sent them scrambling back out the door. *Id.* Detroit Police Chief James Craig said the mother "did the right thing," and her husband expressed relief that he had armed his wife and prepared her for that kind of situation. *Id.* Had he not, he recognized that he "could have came home to a family that was gone." *Id.*

14

In 2017, a civilian in Sutherland Springs, Texas used an AR-15 to stop an active shooter at a church. *See* Michael J. Mooney, *The Hero of the Sutherland Springs Shooting Is Still Reckoning With What Happened That Day,* Texas Monthly (Nov. 2018), https://tinyurl.com/yact97dt. When Stephen Willeford heroically went to the aid of his community, he had many types of guns he could have taken with him. *Id.* But he deliberately chose his AR-15. *Id.* And it's good. The shooter had an AR-15, "but," as Willeford says, "so did I." *Sutherland Springs Hero Honored At NRA Convention: 'He Had An AR-15 And So Did I',* CBS Texas (May 4, 2018, 4:45 PM), https://tinyurl.com/5n899j8z.

Many similar accounts across the country show how firearms save lives. And these are response enough to California's paternalistic claim that these weapons are "not *used* for self-defense." 1-ER-73. Ask the pregnant mother in Tampa, the mom home alone with her kids in Detroit, and the Sutherland Springs hero. Each repelled force with force, and an assault rifle was their lawful and effective weapon of choice.

## II. Recycled Laws Rejected By The Supreme Court Do Not Justify California's Total Ban On Common Arms.

California's historical analysis makes clear why California worked so hard to avoid *Bruen*'s second step. It really does not want the Court to compare the AWCA to traditional firearms regulations. One reason is that the *Bruen* Court already considered and rejected the same types of regulations—and even some of the very same laws, like the 1686 East New Jersey Law—that California says justify its gun ban. Dkt. #25.1 at

51. The Court found that those laws were either too "solitary" to warrant any "meaningful weight" or merely "prohibit[ed] bearing arms in a way that spreads 'fear' or 'terror' among the people." *See Bruen*, 597 U.S. at 46-50. They did not justify regulations on the public carry of firearms more broadly. And if the laws that California cites could not support New York's far narrower firearm regulation, they are unfit to justify California's blanket ban on an entire class of weapons.

That leads to another reason California has gone to great lengths to sidestep *Bruen*. It has no answer to the central question at *Bruen*'s second step: whether the AWCA is "relevantly similar" to historical regulations based on "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *See Bruen*, 597 U.S. at 29. Zilch. Indeed, the State did not identify a single law, anywhere, at any time, between 1791 and 1868 that prohibited simple possession of a gun by law-abiding Americans. 1-ER-30. That is because even raising those "how" and "why" questions spells defeat for the AWCA. The AWCA does not just prohibit "bearing arms in a way that spreads 'fear' or 'terror' among the people." *See Bruen*, 597 U.S. at 50. No, it outright bans the simple possession of hundreds of bearable arms—a far greater effect on the people's right to bear arms. And the reason for the ban is not to prevent public fear at the sight of such weapons but to limit mass shootings and other crimes. The AWCA thus does not share a relevantly similar impact or reason compared with the proffered historical analogues.

California ignores another important point. The *Bruen* Court explained that "when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id.* at 26. Tragically, wicked men have long used guns to murder fellow human beings. In 1876, a man shot and killed his "lover" out of jealousy. *Nat'l Rifle Ass'n v. Bondi*, 61 F.4th 1317, 1319 (11th Cir. 2023). In 1884, an 18-year-old in Philadelphia shot a 14-year-old girl and then turned the gun on himself "because she would not love him." *Id.* And in 1949, Howard Unruh embarked upon his "walk of death" murdering 13 people. *See* Patrick Sauer, *The Story of the First Mass Shooting in U.S. History,* Smithsonian Magazine (Oct. 14, 2015), https://tinyurl.com/578szh6v. But governments did not respond to the depraved and criminal actions of these—and sadly, several other—individuals by banning law-abiding citizens from owning firearms in the way that California has here.

California has pointed to no "distinctly similar historical regulation" addressing the problem of gun violence. That alone makes the AWCA unconstitutional.

## CONCLUSION

For all these reasons, this Court should affirm.

17

Date: December 29, 2023                    Respectfully Submitted,

RAÚL R. LABRADOR
IDAHO ATTORNEY GENERAL

*/s/ Joshua N. Turner*
Joshua N. Turner
  *Acting Solicitor General*
Sean M. Corkery
  *Assistant Solicitor General*
Idaho Office of the Attorney General
700 W. Jefferson St., Suite 210
Boise, ID 83720
(208) 334-2400
josh.turner@ag.idaho.gov
jack.corkery@ag.idaho.gov

AUSTIN KNUDSEN
MONTANA ATTORNEY GENERAL
Christian B. Corrigan
  *Solicitor General*
Peter M. Torstensen, Jr.
  *Deputy Solicitor General*
Montana Department of Justice
215 North Sanders
Helena, MT 59620
Phone: (406) 444-2026
christian.corrigan@mt.gov
peter.torstensen@mt.gov

BRENNA BIRD
IOWA ATTORNEY GENERAL
Eric H. Wessan
  *Solicitor General*
Iowa Department of Justice
1305 E. Walnut St.
Des Moines, IA 50319
Phone: (515) 281-5164
eric.wessan@ag.iowa.gov

18

### *Additional State Signatories*

STEVE MARSHALL
Attorney General
*State of Alabama*

TREG R. TAYLOR
Attorney General
*State of Alaska*

BEN TOMA
Speaker of the Arizona House of
Representatives
*State of Arizona*

WARREN PETERSEN
President of the Arizona Senate
*State of Arizona*

TIM GRIFFIN
Attorney General
*State of Arkansas*

ASHLEY MOODY
Attorney General
*State of Florida*

CHRIS CARR
Attorney General
*State of Georgia*

THEODORE E. ROKITA
Attorney General
*State of Indiana*

KRIS W. KOBACH
Attorney General
*State of Kansas*

DANIEL CAMERON
Attorney General
*Commonwealth of Kentucky*

JEFF LANDRY
Attorney General
*State of Louisiana*

LYNN FITCH
Attorney General
*State of Mississippi*

ANDREW BAILEY
Attorney General
*State of Missouri*

MICHAEL T. HILGERS
Attorney General
*State of Nebraska*

JOHN M. FORMELLA
Attorney General
*State of New Hampshire*

DREW H. WRIGLEY
Attorney General
*State of North Dakota*

DAVE YOST
Attorney General
*State of Ohio*

GENTNER F. DRUMMOND
Attorney General
*State of Oklahoma*

ALAN WILSON
Attorney General
*State of South Carolina*

MARTY JACKLEY
Attorney General
*State of South Dakota*

KEN PAXTON
Attorney General
*State of Texas*

JASON S. MIYARES
Attorney General
*Commonwealth of Virginia*

SEAN D. REYES
Attorney General
*State of Utah*

PATRICK MORRISEY
Attorney General
*State of West Virginia*

BRIDGET HILL
Attorney General
*State of Wyoming*

## CERTIFICATE OF COMPLIANCE FOR BRIEFS

9th Circuit Case No.:          23-55714

I am the attorney representing Amici State of Idaho et. al.

**This brief contains 4,379 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief is an amicus brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

/s/ *Joshua N. Turner*                    December 29, 2023
Joshua N. Turner

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing/attached documents on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

Description of Document:

Amici Curiae of the States.

/s/ *Joshua N. Turner*　　　　　　　　　　　　December 29, 2023
Joshua N. Turner