No. 23-2979

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JAMES MILLER, *et al.*,
    *Plaintiffs-Appellees*,

v.

ROB BONTA, IN HIS OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE STATE OF CALIFORNIA, *et al.*,
    *Defendants-Appellants*.

**On Appeal from the United States District Court
for the Southern District of California**
No. 3:19-cv-01537-BEN-JLB
The Honorable Roger T. Benitez

## APPELLANTS' SUPPLEMENTAL BRIEF

ROB BONTA
*Attorney General of California*
MICHAEL J. MONGAN
*Solicitor General*
HELEN H. HONG
*Principal Deputy Solicitor General*
THOMAS S. PATTERSON
*Senior Assistant Attorney General*

MICA L. MOORE
*Deputy Solicitor General*
JOHN D. ECHEVERRIA
*Supervising Deputy Attorney General*
ROBERT L. MEYERHOFF
*Deputy Attorney General*

CALIFORNIA DEPARTMENT OF JUSTICE
300 South Spring Street, Suite 1702
Los Angeles, CA 90013-1230
Telephone: (213) 269-6177
Fax: (916) 731-2124
Email: Robert.Meyerhoff@doj.ca.gov
*Attorneys for Defendants-Appellants*

April 23, 2025

## TABLE OF CONTENTS

**Page**

Introduction ................................................................................................................1

Argument ...................................................................................................................2

I.     The Regulated Assault Weapons Are Not Presumptively Protected by the Second Amendment ................................................................................2

II.    Assault Weapon Restrictions Fit within the Nation's Tradition of Firearms Regulation ..................................................................................6

III.   *Duncan* Rejected the "Ownership-Statistics Argument" Advanced by Plaintiffs ...............................................................................................10

Conclusion ...............................................................................................................13

Certificate of Compliance ........................................................................................14

Certificate of Service ...............................................................................................15

i

# TABLE OF AUTHORITIES

Page

**CASES**

*B & L Prods., Inc. v. Newsom*
  104 F.4th 108 (9th Cir. 2024) ................................................................................3

*Bianchi v. Brown*
  111 F.4th 438 (4th Cir. 2024) ........................................................................6, 9, 12

*Bondi v. VanDerStok*
  2025 WL 906503 (U.S. Mar. 26, 2025) .................................................................3

*Capen v. Campbell*
  2025 WL 1135269 (1st Cir. Apr. 17, 2024) .......................................................4, 7

*Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*
  108 F.4th 194 (3d Cir. 2024) ...............................................................................12

*District of Columbia v. Heller*
  554 U.S. 570 (2008) .......................................................................................11, 12

*Duncan v. Bonta*
  2025 WL 867583 (9th Cir. Mar. 20, 2025) ...................................................*passim*

*Garland v. Cargill*
  602 U.S. 406 (2024) ...............................................................................................4

*New York State Rifle & Pistol Ass'n v. Bruen*
  597 U.S. 1 (2022) .........................................................................................*passim*

*United States v. Alaniz*
  69 F.4th 1124 (9th Cir. 2023) ............................................................................5, 6

*United States v. Rahimi*
  602 U.S. 680 (2024) ............................................................................1, 3, 10, 12

*United States v. Rush*
  130 F.4th 633 (7th Cir. 2025) ..............................................................................12

# TABLE OF AUTHORITIES
## (continued)

**Page**

*United States v. Salerno*
   481 U.S. 739 (1987)..................................................................................3

**STATUTES**

California Penal Code
   § 30515........................................................................................2, 3, 10, 11
   § 30515(a)(1) ...........................................................................................3
   § 30515(a)(4) ...........................................................................................3
   § 30515(a)(6) ...........................................................................................3
   § 30515(a)(4)(A) ......................................................................................5
   § 32310......................................................................................................1

**CONSTITUTIONAL PROVISIONS**

United States Constitution
   Second Amendment..........................................................................*passim*

## INTRODUCTION

In *Duncan v. Bonta*, 2025 WL 867583 (9th Cir. Mar. 20, 2025) (en banc), the Court upheld California's restrictions on large-capacity magazines, codified in California Penal Code Section 32310, at both steps of framework announced in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). At the first step, the Court held that large-capacity magazines are neither "Arms" covered by the plain text of the Second Amendment nor protected by a "corollary right to possess accessories that are necessary for the ordinary operation of a protected weapon." 2025 WL 867583, at *8-9. These "optional accessories" are not protected even though they "undoubtedly provide[] a benefit for a shooter" in enabling the firing of more rounds without reloading. *Id.* at *10. At the second step, the Court alternatively held that California's large-capacity magazine law "fits within the Nation's tradition of regulating weapons." *Id.* at *23. The Court explained that California's law is "not a precise match to the historical laws"—including restrictions on firearm components and dangerous uses of particular weapons—"'but it does not need to be.'" *Id.* at *3 (quoting *United States v. Rahimi*, 602 U.S. 680, 698 (2024)).

The plaintiffs in *Duncan* have indicated that they intend to file a petition for writ of certiorari. C.A. No. 23-55805, Dkt. 93, at 13. The Attorney General recognizes that this Court may prefer to wait to resolve this appeal until any

1

petition is resolved. But if this Court were to proceed to the merits, *Duncan* confirms that the assault weapon restrictions challenged here, which prohibit the possession of certain rifles, pistols, and shotguns that qualify as assault weapons under California Penal Code Section 30515, comport with the Second Amendment. As explained in the prior briefing, plaintiffs' proposed course of conduct (i.e., possessing certain firearms with tactical features) is not presumptively protected by the Second Amendment, and the challenged restrictions fit comfortably within the Nation's historical tradition of firearms regulation.[1] *Duncan* forecloses many of plaintiffs' arguments to the contrary, and given the similarities between *Duncan* and this case (OB 56), supports reversal of the district court's decision.

## ARGUMENT

### I. THE REGULATED ASSAULT WEAPONS ARE NOT PRESUMPTIVELY PROTECTED BY THE SECOND AMENDMENT

*Duncan*'s step one analysis suggests that the challenged restrictions regulate optional features that are not protected by the Second Amendment. In *Duncan*, the Court concluded that the possession of large-capacity magazines did not implicate the plain text of the Second Amendment because those magazines are not "Arms." 2025 WL 867583, at *9. The Court drew a distinction between "Arms" (i.e., weapons) and "accoutrements," which are "accessories of weaponry." *Id.* at *8.

---

[1] "OB" refers to the opening brief; "AB" refers to the answering brief; and "RB" refers to the reply brief.

2

By expressly protecting only "'arms,' not 'arms and accoutrements,' the Founders constrained the scope of the Second Amendment." *Id.* at *9. The Court further concluded that while the Second Amendment "must carry an implicit, corollary right to bear the components or accessories necessary for the ordinary functioning of a firearm," *id.* at *8 (citations omitted), large-capacity magazines are "not necessary to operate any firearm" and therefore do not fall within that right, *id.* at *9.

Here, plaintiffs have failed to show that each of the categories of assault weapon defined by tactical accessories, such as pistol grips, flash suppressors, and telescoping stocks, are covered "Arms" in themselves or accessories necessary to operate protected weapons. OB 22-23 (citing Cal. Penal Code § 30515(a)(1), (4), (6)). That is plaintiffs' burden at the first step. *See Duncan*, 2025 WL 867583, at *7 n.2; *B & L Prods., Inc. v. Newsom*, 104 F.4th 108, 117 (9th Cir. 2024). And because plaintiffs assert a facial challenge to Section 30515—the "most difficult challenge to mount successfully" (*Rahimi*, 602 U.S. at 693)—they can prevail only by showing that each of the rifle, pistol, and shotgun configurations listed in Section 30515 is unconstitutional, e.g., semiautomatic pistols with barrel shrouds and shotguns with revolving cylinders. OB 2-3, 27-28; RB 11; *see Rahimi*, 602 U.S. at 693 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)); *Bondi v. VanDerStok*, 2025 WL 906503, at *5 (U.S. Mar. 26, 2025) (rejecting facial

3

challenge where the plaintiffs failed to show that the agency lacks the authority to "regulate *any* weapon parts kits or unfinished frames or receivers"); *Capen v. Campbell*, 2025 WL 1135269, at *11-12 & n.8 (1st Cir. Apr. 17, 2024) (holding that Massachusetts' assault weapons law is not likely facially invalid where plaintiffs did "not specifically address whether the vast majority of the Ban's restrictions on distinct weapons and weapon types fall within the ambit of the Second Amendment," including, *inter alia*, restrictions on UZIs, "revolving cylinder shotguns," and rifles that feature a flash suppressor and a grenade launcher).

Plaintiffs cannot meet that burden. The challenged component-based definitions of an assault weapon regulate unprotected accessories. The regulated components are like a large-capacity magazine and other "optional accessories— such as a high-powered scope for a rifle, a gun sling, or a silencer"—[which] may be attached to a firearm without necessarily falling within the scope of the text of the Second Amendment." *Duncan*, 2024 WL 867583, at *10; *see also, e.g.*, *Garland v. Cargill*, 602 U.S. 406, 411 (2024) (a "bump stock," which "replaces a semiautomatic rifle's stock" to enable a shooter to fire more rapidly, is an "accessory"). As in *Duncan*, the record reflects that the listed components are not necessary to operate a firearm; rather, they can be easily removed or replaced, and the resulting featureless weapon can be lawfully sold, possessed, and used as

4

intended. 2-ER-164–166; 3-ER-377–381 ("a firearm does not need any of the devices, accessories, or configurations listed in the AWCA to operate as intended, and they are not necessary to use a firearm effectively for self-defense"). A gun barrel, for example, may be protected by the Second Amendment, but a *threaded* barrel—a particular type of barrel to which a shooter can quickly attach a flash suppressor, forward handgrip, or silencer—is not necessary to operate a firearm. 3-ER-381; *see* Cal. Penal Code § 30515(a)(4)(A).

*Duncan* did not address several of the other arguments made by the Attorney General at the first step of the *Bruen* inquiry: that large-capacity magazines are not presumptively protected by the Second Amendment because they "are not in common use for self-defense," "are most useful in military service," and "are dangerous and unusual." 2025 WL 867583, at *7. The Attorney General advances those arguments here. OB 24-32, 38-39. *Duncan* did not address those "alternative arguments" not because it questioned their validity, but because there were independent reasons for concluding that the plaintiffs' challenge failed at *Bruen*'s first step. 2025 WL 867583, at *7. Even so, *Duncan* confirms that those arguments "pertain[] to the text of the Second Amendment" at *Bruen*'s first step, where plaintiffs bear the burden of proof. *Id*. at *7. This Court in *United States v. Alaniz*, 69 F.4th 1124, 1128 (9th Cir. 2023), situated the common use for self-defense inquiry at the first step (*see* RB 5), and *Duncan* clarified that

"*Alaniz* remains good law," 2025 WL 867583, at *7 n.2. The district court's judgment can be reversed on those alternate grounds as well.

## II. ASSAULT WEAPON RESTRICTIONS FIT WITHIN THE NATION'S TRADITION OF FIREARMS REGULATION

At stage two of the *Bruen* analysis, *Duncan* is binding and determinative. *Duncan* conducted a thorough examination of the same historical "legal regimes" relied upon by the Attorney General in this case: laws regulating trap guns, dangerous uses of weapons, and gunpowder storage. 2025 WL 867583, at *17; OB 40-44. *Duncan* held that those historical laws reflect relevant traditions of firearm regulation that justify California's restrictions on large-capacity magazines. So too here.

1. *Duncan* establishes that "a more nuanced approach" is warranted in this case. As with large-capacity magazines, modern assault weapons "implicate[] *both* unprecedented societal concerns *and* dramatic technological changes." *Duncan*, 2025 WL 867583, at *14 (citations omitted). "Mass shootings are clearly a societal concern that arose only in the 20th century" and "[s]emi-automatic firearms equipped with large-capacity magazines fire with an accuracy, speed, and capacity that differ completely from the accuracy, speed, and capacity of firearms from earlier generations." *Id*. This conclusion has been reached by numerous other courts with respect to assault weapons. *See, e.g.*, *Bianchi v. Brown*, 111 F.4th 438, 463 (4th Cir. 2024) (applying more nuanced approach because "[r]apid

6

advancements in gun technology are a central cause of this mass carnage"), *cert. petition filed sub nom. Snope v. Brown*, No. 24-203 (U.S. Aug 21, 2024); *Capen*, 2025 WL 1135269, at *6-7 (applying a "nuanced approach" in examining assault weapons law).

Although *Duncan* plainly supports the Attorney General's arguments for applying a more nuanced approach here (*see* OB 33-37), *Duncan* took "the most conservative path," 2025 WL 867583, at *15 (emphasis omitted), and declined to apply it because California's restrictions on large-capacity magazines are constitutional even "under *Rahimi*'s straightforward approach," *id.* As in *Duncan*, California's restrictions on modern assault weapons are constitutional under a "straightforward approach."

2. *Duncan* made clear that legislatures historically have, and can still today, enact "laws to protect innocent persons from especially dangerous uses of weapons once those perils have become clear." *Duncan*, 2025 WL 867583, at *17. Governments can also restrict a "component that causes or exacerbates the devastating harm," even if that "component [is] necessary to the firing of a firearm" and the harm is "infrequent." *Id.* at *18 (historical restrictions on gunpowder storage). This historical analysis is controlling here because the Attorney General relies on the same traditions.

7

In *Duncan*, the Attorney General presented three categories of relevantly similar historical analogues: laws regulating "the storage of gunpowder" (2025 WL 867583, at *15), laws "concern[ing] trap guns" (*id*.), and laws which imposed "significant restrictions on weapons after their use by criminals exposed an especially dangerous use of the weapon" (*id*. at *16). Here, the Attorney General relies on those same categories of relevantly similar historical analogues. OB 40-51; RB 15-29.

As to burden, the Court in *Duncan* held that the historical gunpowder storage laws and modern restrictions on large-capacity magazines both "impose a size restriction commensurate with the threat to public safety" which "plainly affect the speed at which a person could fire a firearm." *Duncan*, 2025 WL 867583, at *18.[2] Similarly, the Attorney General argues here that states "heavily regulated gunpowder" to protect public safety, even though such regulations "'necessarily affected the ability of gun owners to use firearms for self-defense' by restricting the availability of gunpowder." OB 42-43 (citation omitted). Regarding trap guns, *Duncan* held that the historical restrictions and large-capacity magazine restrictions

---

[2] *Duncan* focused on the "*method* of burdening the right" instead of the "*magnitude* of the burden," but noted that California's large-capacity magazine restrictions impose "only a minimal burden on the right of armed self-defense." 2025 WL 867583, at *20 n.11. The same is true of the assault weapon restrictions challenged here. OB 49-50.

8

permitted the use of firearms except in a manner that "proved, at the relevant time, particularly dangerous to innocent persons." 2025 WL 867583, at *20. The Attorney General here similarly argues that trap gun laws and assault weapons restrictions restrict "particularly lethal configurations of guns (which, if devoid of those features, are not prohibited)." OB 52-53. Finally, as to dangerous uses of particular weapons, *Duncan* cited approvingly the Fourth Circuit's opinion in *Bianchi*, which describes the burdens of historical restrictions on "the Bowie knife, dirk, sword cane, metal knuckles, slungshot, and sand club and conclud[es] that a ban on assault weapons is relevantly similar to those historical restrictions," *Duncan*, 2025 WL 867583, at *21 (citing 114 F.4th at 464-468). Here, the Attorney General argues that those restrictions are relevantly similar to California's assault weapon restrictions. OB 48-49.

*Duncan* "reject[ed]" the argument that the historical laws "differ[ed] meaningfully" from California's large-capacity magazine ban, even if they regulated only manufacture, sale, and carry. 2025 WL 867583, at *21. The historical laws imposed a comparable burden even if they did not prohibit possession because "a historical *twin* is not required." *Id.* The Court explained that "any difference is precisely because of the factors that *Bruen* mentioned" that may require a more nuanced analysis. *Id.* (citing *Bruen*, 597 U.S. at 27). To insist that the historical laws regulate weapons in the same way would treat the Second

9

Amendment as "'a law trapped in amber'" and assume that founding-era legislatures "'maximally exercised their power to regulate.'" *Id.* (quoting *Rahimi*, 602 U.S. at 691 (Barrett, J., concurring)). While the methods of regulation in the past "may have proved sufficient to mitigate criminal use of Bowie knives," legislatures are not "limited to precisely the same restrictions when addressing new technology that enables a new, more devastating type of societal harm." *Id.*

The historical laws cited in this case and in *Duncan* are also comparably justified. Just as gunpowder storage laws sought to mitigate "infrequent but devastating harm" caused or exacerbated by a particular firearm component, *Duncan*, 2025 WL 867583, at *18, Section 30515 seeks to restrict certain tactical components that enhance the dangers posed by rifles, pistols, and shotguns in mass shootings, OB 50-51. And the historical laws restricting "especially dangerous uses of weapons," including trap guns and Bowie knives, were enacted after their dangers became clear. *Duncan*, 2025 WL 867583, at *19. Similarly, here, the challenged laws address particularly dangerous weapons configurations that are frequently used in, and exacerbate the lethality of, mass shootings. OB 51.

### III. *DUNCAN* REJECTED THE "OWNERSHIP-STATISTICS ARGUMENT" ADVANCED BY PLAINTIFFS

*Duncan* cannot be squared with plaintiff's central argument in this case that if a certain number of firearms with a particular feature have been sold in the United States, those firearms are "'in common use' today for lawful purposes" and that

10

fact "alone is dispositive." AB 1. *Duncan* unequivocally rejected this "simplistic approach." *Duncan*, 2025 WL 867583, at *22.

As an initial matter, *Duncan* noted the "uncertainty about the total number of large-capacity magazines owned by civilians," and how many "were truly 'chosen by American society for th[e] lawful purpose [of self-defense].'" 2025 WL 867583, at *22 n.12 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 628 (2008)) (alterations in original). In this case, plaintiffs did not establish how many rifles, pistols, and shotguns that qualify as assault weapons under California Penal Code Section 30515 are owned by civilians, let alone how many of those weapons were "truly chosen" by Americans for the lawful purpose of self-defense. RB 11. To the extent plaintiffs rely on manufacturing estimates regarding AR- and AK- platform rifles—which, like their military counterparts, are often sold with pistol grips and telescoping stocks (OB 5-6)—"there is no constitutional right to factory settings." *Duncan*, 2025 WL 867583, at *22 n.12.

On its merits, *Duncan* rejected the "facile" "ownership-statistics argument," *id.* at *23, because California's large-capacity magazine restrictions do not amount to a prohibition of "an entire class of 'arms'" that is "overwhelmingly chosen by American society" for self-defense, *id.* at *22 (quoting *Heller*, 554 U.S. at 628). The law rather prohibits "only one type of optional accessory to some firearms." *Id.* at *23. Similarly, here, many of the challenged assault weapon restrictions

11

apply to the use of certain optional features with certain firearms. And unlike the total handgun ban in *Heller*, the challenged restrictions do not ban an entire class of arms commonly used for self-defense. Like large-capacity magazines, the subset of firearm configurations regulated by the challenged laws are "rarely, if ever, used in self-defense." *Id.*; *see Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 215 (3d Cir. 2024) (Roth, J., concurring) (explaining that "home and self-defense scenarios rarely, if ever, involve lengthy shootouts at long ranges or extensive exchanges of gunfire").

Plaintiffs' "rigid" numbers-based approach would mean that no government could ban a weapon or accessory "any time an undefined number of people own an undefined number" of weapons or accessories, regardless of how rarely they are used in self-defense. *Duncan*, 2025 WL 867583, at *22, 23. Such an approach would have "startling" implications. *See id.* at *22 (explaining the implications for machine guns); RB 10 (same). Instead, "*Bruen* and *Rahimi* have described at length the approach that [the Court] must apply." *Duncan*, 2025 WL 867583, at *23; *see also United States v. Rush*, 130 F.4th 633, 644 n.12 (7th Cir. 2025) ("a firearm's popularity in contemporary times has little jurisprudential value"); *Bianchi*, 111 F.4th at 460 (rejecting plaintiffs' "ill-conceived popularity test").

## CONCLUSION

For these reasons, *Duncan* provides further support for the constitutionality of the challenged assault weapon restrictions, and the Court should reverse.

Dated: April 23, 2025

Respectfully submitted,

*s/ Robert L. Meyerhoff*

ROB BONTA
*Attorney General of California*
MICHAEL J. MONGAN
*Solicitor General*
HELEN H. HONG
*Principal Deputy Solicitor General*
THOMAS S. PATTERSON
*Senior Assistant Attorney General*
MICA L. MOORE
*Deputy Solicitor General*
JOHN D. ECHEVERRIA
*Supervising Deputy Attorney General*
ROBERT L. MEYERHOFF
*Deputy Attorney General*
*Attorneys for Defendants-Appellants*

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 23-2979

I am the attorney or self-represented party.

**This brief contains** 2,772 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

☐ complies with the word limit of Cir. R. 32-1.

☐ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

☐ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

☐ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

☐ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
   ☐ it is a joint brief submitted by separately represented parties.
   ☐ a party or parties are filing a single brief in response to multiple briefs.
   ☐ a party or parties are filing a single brief in response to a longer joint brief.

⦿ complies with the length limit designated by court order dated March 24, 2025.

☐ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/Robert L. Meyerhoff   **Date** 04/23/2025
*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at forms@ca9.uscourts.gov

## CERTIFICATE OF SERVICE

      I certify that on April 23, 2025, I electronically filed the foregoing document with the Clerk of the Court of the United States Court of Appeals for the Ninth Circuit by using the Court's Appellate Case Management System (ACMS).  I certify that all other participants in this case are registered ACMS users and that service will be accomplished by ACMS.

| | |
|---|---|
| Dated:  April 23, 2025 | *s/ Robert L. Meyerhoff* |